Marleen Kovalchik BARNETT, Appellant,

v.

Dora Ernestine Luck BARNETT, Individually and as Independent Executrix of the Estate of Christopher Alan Barnett, Deceased; Lori Williams; Lisa Chavez-West; Charlotte Pett; Patricia Graham Irvine; William J. Gosch; Nancy Gosch; Joseph Gosch; Alfred Gosch; Russell D. Irvine, Sr.; Mark D. West; Carol Jean Avant; and Ann Dyess, Appellees.

No. 01–97–00656–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 21, 1998.

Rehearing Overruled Feb. 18, 1999.

Lois Watson, Houston, for appellant.

George W. Dana, Houston, Robin Vaught Dwyer, Seguin, for appellees.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

O'CONNOR, J.

The appellant, Marleen Barnett (the Wife), is the widow of Christopher Barnett. The appellee, Dora Barnett (the Mother), is Christopher's mother. The Wife appeals the partial summary judgment rendered in favor of the Mother and others and the denial of her applications for family allowance and allowance in lieu of exempt property. The Mother appeals a jury verdict in favor of the Wife. We affirm in part, reverse in part and remand in part.

### *Factual Background*

The Wife and Christopher were married August 19, 1989. Christopher died on January 24, 1994. At the time of his death, the Wife and Christopher were separated and in the midst of a divorce proceeding. The divorce was characterized by allegations of cruelty, excessive drinking, and adultery. During the pendency of the divorce, Christopher executed a will naming the Mother as principal devisee of his estate and as independent executrix.

Before and during their marriage, Christopher worked for Houston Industries, Incorporated (HL & P). Christopher was enrolled in a life insurance plan with HL & P, for which he had authorized payroll deductions to pay the premiums. Under the HL & P plan, Christopher had three life insurance policies, one issued by the Prudential Life Insurance Company (G–87560) and two by The Home Insurance Company (GT0020940 and GT0020941). Christopher also had a State Farm Insurance Company policy on his truck, which policy paid a $5,000 death benefit. Christopher's estate was the beneficiary of all his HL & P policies.

After Christopher's death, Prudential, Home Insurance, and State Farm paid the policy proceeds to the Mother as independent executrix of Christopher's estate. From the insurance proceeds, the Mother distributed $164,000 to Lori Williams; $164,000 to Lisa Chavez–West; $10,000 each to Charlotte Pett, Patricia Graham, Jerry Gosch, Nancy Gosch, Joe Gosch, and Alfred Gosch; $5,000 to Russell Irvine, Sr.; $20,000 to Mark and Christy Misner; $10,700 to Ann Dyess; and $1,000 to Ann Dyess's grandson. Lisa Chavez–West transferred part of her distribution to Carol Avant and others.

### A. Procedural Background

#### 1. The Wife's pleadings

The Wife sued the Mother (individually and as independent executrix of Christopher's estate), Lisa Chavez–West, Mark West, Lori Williams, Charlotte Pett, Patricia Graham, Russell Irvine, Mark Misner, Christy Misner,[1] Jerry Gosch, Nancy Gosch, Joe Gosch, Alfred Gosch,[2] Ann Dyess, and Carol Avant. The Wife contended that (1) of the total insurance proceeds ($637,955.93), the Wife was entitled to $318,977.97, plus pre-judgment interest; (2) the Mother refused to partition and distribute to the Wife a one-half interest in Christopher's community estate; and (3) the Wife was entitled to a family allowance and an allowance in lieu of exempt property.

The Wife moved for partial summary judgment against the Mother and the West defendants asking the trial court to determine that (1) Christopher's insurance policies were community property, (2) the Wife did not forfeit her interest in the Prudential and Home Insurance policies under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001, et. seq., and (3) the Wife was deprived of her community interest in the insurance proceeds through constructive fraud. The Wife also filed a motion for partial summary judgment against Dyess asking for the same relief on the same grounds.

---

1. Lisa, Mark, Lori, Charlotte, Patricia, Russell, and Mark and Christy Misner are collectively referred to as the West defendants.

2. Jerry, Nancy, Joe, and Alfred are collectively referred to as the Gosch defendants.

## 2. The defendants' pleadings

The Mother and the West defendants moved for partial summary judgment, asking the trial court to dismiss the Wife's causes of action against them relating to recovery of the proceeds of the life insurance policies. They asserted that (1) because the Prudential and Home Insurance policies were subject to the provisions of ERISA, state community property law did not control and (2) ERISA aside, these policies were Christopher's separate property. The Gosch Defendants also moved for partial summary judgment, asking for the same relief on the same grounds. The defendants did not dispute the community estate's right to reimbursement for premiums paid during the marriage. The defendants sought summary judgment on the Prudential and Home Life policies only; they did not include the State Farm policy in their request for relief. Neither Dyess nor Avant filed motions for summary judgment.

## 3. The summary judgment

The trial court (1) denied the motions for partial summary judgment filed by the Wife; (2) granted the motions for partial summary judgment filed by the Mother, the West defendants, and the Gosch defendants; (3) denied all the Wife's claims against the Mother, both individually and as executrix, seeking recovery of the life insurance proceeds; (4) dismissed all the Wife's claims against the West defendants, the Gosch defendants, and Dyess based upon their receipt of the proceeds of the life insurance policies; and (5) left the issue of premium reimbursement for later disposition.

## 4. The trial

After the disposition of the motions for summary judgment, the case proceeded to trial before a jury. After the Wife rested, the trial court granted motions for directed verdicts to all of the defendants, except the Mother, as to the Wife's allegations of civil conspiracy, breach of fiduciary duty, and constructive fraud. The trial court also granted a directed verdict to all defendants as to the Wife's cause of action based upon the existence of a constructive trust on Christopher's life insurance proceeds.

At the end of trial, the jury responded to the jury questions by finding as follows:

(1) The Mother willfully or with reckless disregard converted the Wife's community property (the Wife was awarded $29,200 in damages).

(2) The Mother willfully or with reckless disregard committed waste of the Wife's community property (no award of damages).

(3) The Mother spent $36,520.75 of community property on Christopher's separate rental properties.

(4) The Wife's community property received $26,500 in income from Christopher's separate rental property.

(5) The Wife incurred attorney's fees in the amount of $40,000.

The trial court signed a final judgment (1) incorporating its disposition of the partial summary judgments, (2) ordering that the Wife take nothing as against all the defendants except the Mother, (3) denying the Wife's applications for family allowance and for an allowance in lieu of homestead and exempt property, and (4) granting the Wife a judgment against the Mother for (a) one-half of the Prudential and Home Insurance premiums, plus prejudgment interest; (b) the conversion of $29,200, plus prejudgment interest; (c) reimbursement of the Wife's community property spent to enhance Christopher's separate rental property in the amount of $10,020.75, plus prejudgment interest; and (d) attorney's fees in the amount of $40,000, plus costs of court.

## B. The Motions for Partial Summary Judgment

In points of error one and two, the Wife asserts the trial court erred in rendering summary judgment in favor of the Mother, the West defendants, and the Gosch defendants. The Wife argues that (1) although ERISA applies to life insurance beneficiary designations, it does not nullify Texas community property law applicable to the community estate's interest in the proceeds of the insurance and (2) Christopher's insurance policies were community property. The Wife

also asserts the defendants' summary judgment evidence was inadmissible.

In point of error four, the Wife asserts the trial court erred in denying her motion for partial summary judgment. The Wife moved for summary judgment on the grounds that (1) she was entitled to one-half of the proceeds of the Prudential, Home Insurance, and State Farm policies as her community property interest; (2) the Mother, as executrix, breached her fiduciary duty to her; (3) the Mother, individually, converted her community property; (4) the Mother's conveyance of the proceeds to the other defendants was fraudulent; and (5) the other defendants who received the proceeds from the Mother should be declared constructive trustees for the Wife's benefit.

Summary judgment is proper when a defendant establishes, as a matter of law, there are no issues of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997); *Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 924 (Tex.App.—Houston [1st Dist.] 1993, no writ). We will consider all summary judgment grounds on which the trial court rules, that the Wife preserves for appellate review, and that are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996). We will affirm the summary judgment if any of the theories advanced in the motion for summary judgment is meritorious. *Id.* We will not consider any ground for reversal that was not expressly presented to the trial court by written motion, answer, or other response to the motion for summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979); *Jones,* 846 S.W.2d at 924.

When both parties move for summary judgment, each must carry its own burden as the movant, and, in response to the other party's motion, as the nonmovant. *Knighton v. International Bus. Machines Corp.,* 856 S.W.2d 206, 208 (Tex.App.—Houston [1st Dist.] 1993, writ denied). When both parties move for summary judgment and one is overruled and the other granted, on appeal we determine all questions presented. *Jones v.*

*Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Knighton,* 856 S.W.2d at 209. This Court may affirm the judgment or reverse the judgment and render judgment for the other movant. *Jones,* 745 S.W.2d at 900; *Teledyne Isotopes, Inc. v. Bravenec,* 640 S.W.2d 387, 389 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

## 1. Application of ERISA

■ The parties agree that the life insurance (through Prudential and Home Insurance) provided to Christopher by HL & P was part of an ERISA-regulated employee benefit plan. The Mother asserts that ERISA supersedes state community property law; therefore, payment of the life insurance proceeds to the designated beneficiary forecloses any inquiry into whether the insurance policies were community property. The Wife argues that the provisions of ERISA applied only to the point in time when the life insurance proceeds were paid to the designated beneficiary, at which point state law was then triggered to control what, if anything, the beneficiary did with the proceeds. The Wife's argument is premised on the fact that (1) Christopher designated his *estate* and not *the Mother* as the beneficiary of the life insurance proceeds and (2) as independent executrix of Christopher's estate, the Mother owed a duty to the Wife to distribute to the Wife her community property interest in the life insurance proceeds once *the estate* received the proceeds from the plan administrator.

In support of her argument that ERISA preempts Texas community property law, the Mother relies on a series of cases involving either a challenge to the actions of a plan administrator or the payment of claims under a plan subject to ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (whether ERISA preempts state common law tort and contract actions asserting improper processing of claim for benefits under an insured employee benefit plan); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (whether ERISA pre-empts New York laws requiring employers to pay sick-leave benefits to employees unable to work be-

**526**

cause of pregnancy); *Holland v. Burlington Indus., Inc. .,* 772 F.2d 1140 (4th Cir.1985) (whether employers' denial of severance pay under employers' severance-pay plan was proper under ERISA); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter., Inc.,* 793 F.2d 1456 (5th Cir.1986) (whether allegations that trustee breached common law fiduciary duty to trust were pre-empted by ERISA).

None of these cases applies here because the Wife does not attack the actions taken by the administrator of Christopher's insurance plans nor does she contend payment of the insurance proceeds to his estate was improper. Instead, the Wife alleges the Mother breached her fiduciary duty to take possession of the estate's property and to hold it in trust for those rightfully entitled to the property. She also alleged conversion, fraudulent concealment, civil conspiracy, fraudulent transfer, and waste. The Wife sought to have a constructive trust placed on the insurance proceeds received by the defendants to whom the Mother made distributions. Therefore, resolution of this issue depends on whether the Wife's causes of action implicate the purpose of ERISA.

■ ERISA's preemption provision refers to state laws relating to "employee benefit plans," not "employee benefits." 29 U.S.C.A. § 1144(a) (1985);[3] *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 7–8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987); *Manahan v. Meyer,* 862 S.W.2d 130, 137 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In *Fort Halifax,* employees who were laid off after a plant closing sought recovery of severance pay under a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant's closure. The company asserted that any state law pertaining to a type of employee benefit listed in ERISA regulated an employee benefit plan, and, therefore, must be pre-empted. Because severance benefits are included in ERISA, the company argued that ERISA pre-empted the Maine statute. 482 U.S. at 7,

107 S.Ct. at 2215. The Supreme Court disagreed for three reasons. First, the Maine statute did not establish or require an employer to maintain an employee welfare benefit "plan" under ERISA. 482 U.S. at 7, 13, 107 S.Ct. at 2215, 2218. Second, the possibility of a one-time payment in the future, or the act of making such a payment, did not create the potential for the type of conflicting regulation of benefit plans that ERISA preemption was intended to prevent. 482 U.S. at 14, 107 S.Ct. at 2219. Finally, the Maine statute did not involve the establishment, operation, and administration of an employee benefit plan. 482 U.S. at 15–16, 13, 107 S.Ct. at 2219–20. Therefore, ERISA's regulatory concerns were not implicated. *Id.*

The analysis in *Fort Halifax* is helpful here in determining whether ERISA governs what, if anything, a beneficiary must do once having received the benefits of an ERISA plan. In this case, the specific question is whether ERISA dictates the actions of a probate estate executrix. We hold that ERISA does not pre-empt Texas state law governing the actions of an such an executrix under the facts presented here. The administration of Christopher's probate estate does not relate to an employee benefit plan. The Wife's suit against the Mother, as executrix of Christopher's estate, imposes no regulation on HL & P's plan or its administrator, and the obligations imposed on an executrix of a probate estate do not implicate ERISA's regulatory concerns. Under these circumstances, pre-emption does not serve the overall purpose of ERISA, and the Mother was not entitled to summary judgment on this basis.

**2. Christopher's separate property**

We next consider whether the Mother was entitled to summary judgment on the ground that the insurance policies were Christopher's separate property. Christopher's will directed the following distributions:

---

**3.** "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C.A. § 1144(a) (1985).

- To the Mother, all property of whatever kind, as hers and hers alone in fee simple.
- To his sister, Lisa Barnett Chavez, all interest in certain real property described in the will.
- To his children, Jason Christopher Barnett and Aurelia Renee Barnett, upon their eighteenth birthday, the sum of $1.00.

No other distributions were specified. Therefore, under the express provisions of the will, the Mother (as principal devisee) received the proceeds of the insurance policies. The Wife asserts the Mother's distribution of the insurance proceeds to herself improperly divested the Wife of her community property interest in the proceeds. Resolution of this issue turns on whether the policies were Christopher's separate property or property of the community estate.

■ The Wife and Christopher were still married at the time of his death; therefore, the insurance policies were presumptively community property when he died. *See* Tex. Fam.Code §§ 3.002, 3.003. The Wife asserts the insurance proceeds were community property based on the inception of title doctrine. The Mother contends the policies were Christopher's separate property because each policy was purchased before the Wife and Christopher married.

■ The party claiming separate property must establish by clear and convincing evidence that the property is separate property. Tex.Fam.Code § 3.003(b); *Massey v. Massey,* 807 S.W.2d 391, 405 (Tex.App.—Houston [1st Dist.] 1991), *writ denied,* 867 S.W.2d 766 (Tex.1993). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Cocker-*

*ham v. Cockerham,* 527 S.W.2d 162, 167 (Tex. 1975). Therefore, we consider whether the Mother's summary judgment evidence rebutted the presumption in favor of the community.

### a. The Mother's summary judgment evidence

■ As a preliminary matter, the Wife complains that the summary judgment evidence submitted by the Mother, the West Defendants, and the Gosch Defendants was inadmissible. The defendants' summary judgment evidence included two affidavits of Elizabeth Weylandt and attachments to her affidavits. The Wife objected that Weylandt's affidavits were not based on personal knowledge, she was only a fact witness and not an expert, and the documents referenced by Weylandt were neither authenticated nor submitted to the trial court. The Wife filed an objection to the evidence and a motion to strike the evidence.[4]

■ The Wife's objections to Weylandt's affidavit have no merit. She asserts Weylandt was not qualified as an expert, but the Mother did not attempt to offer Weylandt's testimony as an expert; Weylandt's testimony was offered as custodian of records for HL & P. Weylandt's affidavit met the requirements of Tex.R.Evid. 902(10). *March v. Victoria Lloyds Ins. Co.,* 773 S.W.2d 785, 789 (Tex.App.—Fort Worth 1989, writ denied). As for the Wife's objection that the documents attached to the affidavit were not authenticated, with the exception of a history of enrollment, the Wife submitted the same documents in support of her motion for partial summary judgment. Although the Wife objects to the enrollment history, she does not contradict Weylandt's statement that Weylandt prepared the history at the request of the attorneys for the Mother *and* the Wife. The Mother's summary judgment evidence was admissible.

### b. The State Farm policy on the truck

---

4. The defendants contend the Wife did not preserve error because the trial court did not overrule her objection. The trial court refused to rule on the Wife's objection. The Wife also filed a motion to enter orders for inclusion in the transcript. The orders she requested were those denying her objection to the affidavit and her motion to strike same. The court denied her motion to enter orders for inclusion in the transcript, thereby implicitly overruling her objection and motion to strike. *See* Tex.R.App .P. 33.1(a)(2)(A). The Wife preserved error.

The Wife asserts the $5,000 paid under the State Farm policy belonged to the community estate. On appeal, the Mother contends the State Farm proceeds paid the community debt on Christopher's truck at his death; therefore, she argues the community received the benefit of the policy. The Wife asserts, correctly, that the Mother raises this contention for the first time on appeal and it is not supported by the evidence.

The Mother also asserts this policy was not the subject of the trial court's summary judgment order and is not relevant to the issues on appeal. We agree. In the Wife's motion for partial summary judgment, she asserted she was entitled to one-half of the State Farm proceeds. The Mother's motion for summary judgment did not address the State Farm policy. The trial court denied the Wife's motion for summary judgment. The parties did not move to sever the insurance claims from the other causes of actions; instead, the parties proceeded to trial. At trial, no evidence was produced regarding the ownership of the State Farm policy and its proceeds, and the issue was not submitted to the jury. The Wife has waived this ground of recovery. Tex.R.Civ.P. 279.

### c. The Home Insurance Company policy

The Wife asserts the $463,176 paid under Home Insurance policy GT 0020941 belonged to the community estate. The Mother asserts the policy that was in existence at the time of Christopher's death was an increase in or mutation of the policy that was in existence before the marriage. Therefore, she argues the entire $463,176 was Christopher's separate property. We agree.

The history of enrollment shows the following pertinent activity:

| Date | Carrier | AD & D Amount |
|---|---|---|
| 1–1–87 Enrolled in initial AD & D coverage | Home Insurance | $50,000 basic plus $325,000 additional |
| 8–19–89—date of marriage | | |
| 7–16–91 Increased AD & D coverage | same carrier | $50,000 basic plus $375,000 additional; seat belt and education benefits added in 1992 |
| 1–1–94 | same carrier | $50,000 basic plus 10 × annual salary |
| 2–21–94 | same carrier | basic + additional: $50,000 + (10 × 42,016)= $470,016 seatbelt benefit + $47,001 education benefit = $1,000 <br><br> Total = $518,017 |
| 6–9–94 Home Life pays death benefit | same carrier | $55,000 principal sum plus $463,176 principal sum-including seatbelt and education benefits <br><br> Total = $518,176 |

Christopher first purchased additional coverage before the marriage in the amount of $325,000. The insurance carrier and policy number did not change. During the marriage, the amount was increased to $375,000. Again, the insurance carrier and policy number remained the same. This evidence is sufficient to rebut the presumption in favor of the community.

Although the Wife concedes this policy was issued before the marriage, she contends the controlling document under which Home Insurance paid the proceeds to Christopher's estate was a 1991 benefits enrollment form that states "this form supersedes any previous form." The form, entitled "Benefits Enrollment–Change Form," indicates that Christopher chose "additional & dependant coverage" in the amount of $375,000 and authorized his employer to make the appropriate payroll deductions for this coverage. This form neither conclusively establishes the community character of the additional coverage nor raises a material fact issue sufficient to defeat the Mother's entitlement to summary judgment. The additional coverage was Christopher's separate property. *See* Tex.Fam.Code § 3.001.

**d. The Prudential Life Insurance Company policy**

■ The Wife asserts the $169,779.93 paid under Prudential policy belonged to the community estate. The Mother asserts the Prudential policy was a mutation of the policy that was in existence before the marriage. Therefore, she argues the $169,779.93 in proceeds were Christopher's separate property.

We disagree. The Prudential policy is dated January 1, 1993, *during the marriage, and* premiums on the policy were paid with community assets (Christopher's income). Therefore, the policy was presumptively an asset of the community estate. Tex.Fam. Code § 3.003(a).

The Mother relies on Weylandt's affidavit for her contention that the Prudential policy was Christopher's separate property. In her affidavit, Weylandt states (1) she is staff attorney for HL & P and a custodian of records and (2) she prepared or caused to be prepared, at the parties' request, a history of Christopher's enrollment in HL & P's group life insurance and accidental death and dismemberment insurance. The enrollment history references insurance policies issued by Great Southern Life Insurance Company, Metropolitan Insurance Company, Prudential Insurance Company, and the Home Insurance Company. Only the Home Insurance policy is attached to the affidavit. Weylandt's affidavit states that the enrollment history shows all activity relating to the group life insurance and accidental death and dismemberment insurance coverage obtained by Christopher while he was an employee for HL & P and indicates the supporting documentation and beneficiary designations. She swore that all statements contained in the document were true and correct to the best of her knowledge and were based on the supporting documentation that followed the five page history of enrollment.

The history of enrollment shows the following pertinent activity:

| Date | Carrier | Basic coverage | Additional coverage |
|------|---------|----------------|---------------------|
| 2–15–78 | Great Southern Life | 2 × annual salary | none |
| 1–1–87 | change to Metropolitan | 1 × annual salary | 2 × annual salary |
| | 8–19–89—date of marriage | | |
| 1–1–91 | same | same | 3 × annual salary |
| 1–93 | change to Prudential | same | same |

The Mother asserts the Prudential policy was a continuation of a policy that was in existence for over 11 years before the marriage. Weylandt's affidavit, the enrollment history, and the other exhibits attached to Weylandt's affidavit do not support this contention. The Mother did not rebut the presumption in favor of the community by clear and convincing evidence.

The Wife's summary judgment evidence conclusively established the community nature of the Prudential policy. The policy, dated during the marriage, does not indicate it replaces, modifies, or supplements a pre-existing policy. It is a different contract for insurance, with a different policy number from that of the earlier policies. The proceeds of the Prudential policy were an asset of the community estate.

### e. Summary

The Mother was not entitled to summary judgment on the ground that the Prudential policy was Christopher's separate property. Having determined that the proceeds of this policy belonged to the community estate, we now address whether Christopher's gift of the proceeds to the Mother was constructive fraud.

We affirm the summary judgment in favor of the Mother as to the proceeds of the Home Insurance policy only.

### 3. Constructive fraud

Generally, the proceeds of life insurance purchased with community funds are community property. *Brown v. Lee*, 371 S.W.2d 694, 696 (Tex.1963); *Street v. Skipper*, 887 S.W.2d 78, 81 (Tex.App.—Fort Worth 1994, writ denied). However, this rule does not automatically dictate that the proceeds be given to the surviving spouse. *Street*, 887 S.W.2d at 81. The insured may name as a beneficiary of a community-owned insurance policy a third party or the decedent's estate. Tex.Ins.Code § 3.49–3;[5] *Street*, 887 S.W.2d at 81. The designation of a life insurance beneficiary is the equivalent of a gift in the absence of consideration from the beneficiary to the insured. *Givens v. Girard Life Ins. Co.*, 480 S.W.2d 421, 424 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Whether the gift should be allowed to stand is determined by whether the designation of a beneficiary other than the surviving spouse was made in the absence of fraud. *Street*, 887 S.W.2d at 81; *Ashmore v. Carter*, 716 S.W.2d 171, 174 (Tex.App.—Beaumont 1986, no writ).

The Wife contends the "gift" of her community property to the Mother was constructive fraud because the community funds transferred were not in reasonable proportion to the remaining community assets. Courts consider several factors in determining the fairness of a gift, including the size of the gift in relation to the total size of the community estate; the adequacy of the estate remaining to support the wife, the gift notwithstanding; the relationship of the donor to the donee; and whether special circumstances existed to justify the gift. *Street*, 887 S.W.2d at 81; *Givens*, 480 S.W.2d at 426. The donor-spouse or the donee seeking to sustain the gift has the burden of proving that the gratuitous transfer of community assets was fair. *Murphy v. Metropolitan Life Ins. Co.*, 498 S.W.2d 278, 282 (Tex. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.).

The tax return for Christopher's estate valued his estate at the gross amount of $930,260. The value of the community estate included the following assets:

| Description | Value | Wife's share |
| --- | --- | --- |
| Homestead equity | $ 16,285.00 | $ 8,142.50 |
| HL & P savings plan | 41,638.00 | 20,819.00 |
| 1992 tax refund | 3,851.00 | 1,926.00 |

---

**5.** "A spouse shall have management, control and disposition of any contract of life insurance or annuity heretofore or hereafter issued in his or her name or to the extent provided by the contract or any assignment thereof without the joinder or consent of the other spouse." Tex.Ins. Code § 3.49–3.

| | | |
|---|---|---|
| Salary and accrued vacation | 4,991.00 | 2,496.00 |
| Annuity payable monthly for life of the Wife at $426.06 per month | 47,784.00 | 23,892.00 |
| **Total** | **$114,549.00** | **$57,275.50** |

---

The return showed community debt in the approximate amount of $83,474, of which one-half was attributed to the Wife as her interest in the community's debt.

The tax return valued Christopher's separate estate at approximately $742,096. This amount included the insurance proceeds of $691,240,[6] none of which was included in the Wife's community property interest. All of the $742,096 went to the Mother. The Mother also received all of Christopher's interest in the community estate, approximately $49,133.00, except for his interest in the homestead, which interest he devised to his sister. The size of the community estate, as defined and valued by the Mother on the return ($114,549), is small compared to the size of the gift to the Mother of all the insurance proceeds ($691,240).

The Wife does not dispute that she was entitled to only one-half of Christopher's HL & P savings plan and one-half of the tax return. Therefore, she received an additional $22,745 over and above her community property interest in these assets. However, even with this additional amount, the adequacy of the remaining community estate is overshadowed by the amount of the gift to the Mother. Although the Mother was the natural object of Christopher's bounty, the only testimony regarding her financial condition was that she did not depend on Christopher for assistance. The Mother did not present evidence of any special circumstances.

Christopher's gift of the proceeds of the Prudential policy to the Mother was constructively fraudulent. The Wife was entitled one-half of the $169,779.93 Prudential proceeds as her community property inter-

est, and she was entitled to summary judgment on this basis.

We overrule the Wife's points of error one, two, and four as to the proceeds of the State Farm and Home Insurance policies. We sustain the Wife's points of error one, two, and four as to the proceeds of the Prudential policy.

**4. Summary judgment in favor of Dyess and Avant**

In point of error three, the Wife complains that the trial court erred in granting summary judgment in favor of Dyess and Avant because neither filed a motion for summary judgment. At trial, the court granted directed verdicts in favor of all defendants, except the Mother. Because the Wife did not challenge the directed verdict in favor of Dyess and Avant on appeal, it is final as to them.

We overrule the Wife's point of error three.

**C. Applications for Allowance**

In four points of error, the Wife asserts the trial court erred in denying her application for family allowance and her application for allowance in lieu of exempt property because the trial court's order was against the great weight and preponderance of the evidence and because such denial was an abuse of discretion.

After the jury was discharged, the trial court heard the Wife's applications. In its final judgment, the trial court denied both applications. The trial court also entered the following conclusions of law:

(1) Marleen Barnett's failure to submit or request a jury finding on the issue of her maintenance requirements for the one year

---

6. The individual policies paid as follows: Prudential policy # G–87560—$168,064, Home Insurance—$463,176, Home Insurance policy

GT0020941—$55,000, and State Farm—$5,000. The return did not include an additional $1,715.93 paid by Prudential as interest.

period following decedent's death, constitutes a waiver of such grounds of recovery.

(2) Marleen Barnett's failure to submit or to secure a jury finding on any element of her request for family allowance or allowance in lieu of exempt property constitutes a waiver of such grounds of recovery.

(3) Marleen Barnett failed to prove any necessity for a family allowance.

.    .    .    .    .

(5) Marleen had adequate separate property cash and income sufficient for her support during the twelve month period following the death of Christopher Barnett.

**1. Family allowance**

■ The trial court erred in holding that the Wife waived her right to a family allowance because she did not submit a jury question on the issue of an allowance. A jury finding was not required. The Texas Probate Code requires *the court* to fix a family allowance for the support of the surviving spouse and minor children of the deceased immediately after the inventory, appraisement, and list of claims have been approved. Tex.Prob.Code § 286.

Although a trial court is required to fix an allowance, the amount of the allowance is within the trial court's discretion. The court must consider the facts and circumstances then existing and those anticipated to exist during the year after the decedent's death. Tex.Prob.Code § 287. The amount of the allowance must be sufficient for the maintenance of the surviving spouse for one year from such death. *Id.* The trial court is not permitted to make an allowance for the surviving spouse if the survivor has separate property adequate for her maintenance. Tex.Prob.Code § 288.

Christopher died January 24, 1994. The Wife testified that her living expenses for the first year following Christopher's death amounted to $28,440 and that she had to borrow money from her parents to meet her expenses.

■ The Mother asserted the Wife was not entitled to an allowance because she received the following payments during the year following Christopher's death: (1) from 1993 to 1996, the Wife worked full-time as a secretary earning approximately $10 an hour; (2) in February 1994, HL & P began paying the Wife a $426 per month annuity; (3) in June 1994, the Wife received a tax refund in the amount of $3,851; and (4) in July 1994, HL & P paid the Wife $41,637.86 from Christopher's savings plan. However, none of these funds were the Wife's separate property. Because the Wife did not have separate property adequate for her maintenance, she was entitled to an allowance for the year following Christopher's death.

**2. Allowance in lieu of exempt property**

■ The Wife requested an allowance of $15,000 in lieu of homestead and $5,000 in lieu of exempt property. The trial court erred in holding that the Wife waived her right to an allowance in lieu of exempt property because she did not submit or obtain a jury question on the issue of an allowance. A jury finding was not required. The Texas Probate Code requires *the court* to "set apart for the use and benefit of the surviving spouse . . . all such property of the estate as is exempt from execution or forced sale by the constitution and laws of the state." Tex. Prob.Code § 271. If the deceased did not have exempt property, *the court* is required to make a reasonable allowance in lieu of exempt property to be paid to the surviving spouse. Tex.Prob.Code § 273.

■ The allowance in lieu of a homestead cannot exceed $15,000, and the allowance for other exempted property cannot exceed $5,000, exclusive of the allowance for the support of the surviving spouse. *Id.* The amount of an allowance in lieu of exempt property and homestead is addressed to the trial court's discretion. *Gonzalez v. Guajardo de Gonzalez*, 541 S.W.2d 865, 868 (Tex. Civ.App.—Waco 1976, no writ); *San Angelo Nat. Bank v. Wright*, 66 S.W.2d 804, 805 (Tex.Civ.App.—Austin 1933, writ ref'd). The allowance is payable only if there is no homestead or other exempt property among the effects of the deceased. *Miller v. Miller*, 230 S.W.2d 237, 241 (Tex.Civ.App.—Beaumont 1950), *rev'd on other grounds*, 149 Tex. 543, 235 S.W.2d 624 (Tex.1951) (it was not the

Legislature's intent to provide allowance in lieu of a homestead if there is a homestead, but, rather, to provide an allowance only if there is no homestead).

██ Here, the evidence shows that, at the time of Christopher's death, the community estate included a homestead and other exempt property. The Wife specifically declined to take the homestead. There is no statutory provision that permits a spouse to decline exempt property and instead receive an allowance. The Wife was not entitled to an allowance in lieu of exempt property.

We sustain the Wife's points of error five and six. We overrule the Wife's points of error seven and eight.

### D. Conversion Claim

#### 1. Damages for conversion of the Wife's property

██ In cross-point one, the Mother asserts the trial court erred in entering judgment for the Wife in the amount of $29,200 for damages for conversion because the award exceeded the amount pled for by the Wife.

In her petition, the Wife asked for $47,829, which she alleged represented her one-half of the community estate's interest in sums of money, personalty, and the homestead. Of this amount, $2,500 represented her one-half interest in the value of household furnishings and personalty. The Wife's petition alleged that the Mother refused to distribute to her one-half of the community estate. In her prayer for relief, the Wife asked for "partition of the decedent's estate in order to distribute to her the properties due to her or money damages in lieu thereof."

At trial, the Wife testified that the Mother possessed certain tangible items of community property that were valued at $29,200. The Mother's counsel did not object to the testimony. The Mother also testified about the personal property, and the following exchange occurred between the Mother and her attorney:

Q: Who came up with that figure, $29,-200?

A: Marleen [the Wife] and I together.

Q: Whose figures did you use in getting to that figure?

A: I would ask Marleen what was this worth, you know, what was it that you had, and right down the line, and I did not argue with her about any of it.

. . . . .

Q: She [the Wife] has sued you, irrespective of the insurance, for it looks like community property that she values in her lawsuit of $5,000, seeking her one-half share of $2500?

A: What was that for?

Q: Well, it's on the petition it is cited as household furnishings and personal property.

[The Wife's counsel]: Your Honor, I object to counsel testifying from the petition. The evidence is what is controlling and those values have been tried by consent already.

The Court: That's true. You can lay your predicate but let's move on.

[The Mother's counsel]: All right.

. . . . .

Q: Now, just one final point. When there was—were these discussions of $29,-200 and you agreed to the $29,200, was that because you believed you owed it to Marleen or was that because you believed that would settle the dispute?

A: I thought that would just settle the dispute since she had picked out all the numbers and we had put them together, I thought that that would be an end to it.

In closing arguments, both attorneys referred to the $29,200 value.

The Mother asserts the judgment does not conform to the Wife's pleadings. Tex. R.Civ.P. 301. She also contends that, because the Wife valued her one-half of the personalty at $2,500 and never amended her pleadings, she is limited to that amount in recovery. The record does not indicate that the Mother objected to the following jury questions:

Do you find that [the Mother] converted [the Wife's] community property?

What sum of money do you find, if any, if paid now and in cash, would compensate [the Wife] for her damages proximately caused by conversion of her community property by [the Mother]?

The Wife's petition listed several items that she alleged had been converted by the Mother. The jury heard testimony from the Mother and the estate's accountant regarding his and the Mother's estimation of the Wife's potential claim against the estate for amounts or property other than the life insurance proceeds. The jury was not asked to identify specifically the amounts or property converted or to specify a dollar amount for each item converted. The jury's award could reasonably be related to *all* the property it determined the Mother converted and not just the personalty she converted.

We overrule cross-point one.

**2. Elements of conversion**

In cross-point two, the Mother asserts the Wife did not prove all the elements of conversion because there was no evidence the Wife made demand for the return of her property.

■ A claim for conversion requires the plaintiff to show (1) title, (2) right to possession, and (3) a demand for return of the property unless the possessor's acts manifest a clear repudiation of the plaintiff's rights. *Schwartz v. Pinnacle Comm.*, 944 S.W.2d 427, 432 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Whitaker v. Bank of El Paso,* 850 S.W.2d 757, 760 (Tex.App.—El Paso 1993, no writ).

In reviewing "no evidence" or legal insufficiency points, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Neese v. Dietz,* 845 S.W.2d 311, 312 (Tex.App.—Houston [1st Dist.] 1992, writ denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman,* 760

S.W.2d at 242; *Neese,* 845 S.W.2d at 312. That is, if there is more than a scintilla of evidence, we will not overturn the jury's findings. *Sherman,* 760 S.W.2d at 242.

■ The evidence most favorable to the jury's finding is as follows. The Mother testified the Wife called her about a month after Christopher's death to discuss "what she was going to get." The Wife testified she made written demand for her property 30 days before suit. This testimony amounts to more than a scintilla of evidence that the Wife demanded the return of her property. The evidence is legally sufficient to support the jury's finding that the Mother converted the Wife's property.

We overrule cross-point two.

**E. Attorney's Fees**

In cross-point three, the Mother asserts there is no basis in law for the Wife's recovery of attorney's fees.

Section 245 of the Texas Probate Code provides as follows:

When the personal representative of an estate or person neglects the performance of any duty required of him, and any costs are incurred thereby, or if he is removed for cause, he and the sureties on his bond shall be liable for costs of removal and other additional costs incurred that are not authorized expenditures, as defined by this code, and for reasonable attorney's fees incurred in removing him and in obtaining his compliance regarding any statutory duty he has neglected.

Tex.Prob.Code § 245.

■ The Mother agrees that this section provides for attorney's fees in an action seeking to compel a representative's compliance with any statutory duty. However, the Mother asserts that the Wife's lawsuit did not seek to compel compliance with a statutory duty, but, instead, sought only a money judgment. We disagree.

■ Costs and attorney's fees are assessed against the personal representative of an estate because of the inequities inherent in penalizing the estate when the representative neglects his or her duty. *Lawyers Sur.*

Corp. v. Larson, 869 S.W.2d 649, 652 (Tex. App.—Austin 1994, writ denied); *Fillion v. Osborne*, 585 S.W.2d 842, 845 (Tex.Civ. App.—Houston [1st Dist.] 1979, no writ). The Mother, as independent executrix of Christopher's estate, held the property interests of the estate for the benefit of others, not for her own benefit. *Street*, 887 S.W.2d at 82; *Geeslin v. McElhenney*, 788 S.W.2d 683, 684 (Tex.App.—Austin 1990, no writ). An independent executor's primary duty is to wind up the estate by paying its debts and distributing the property to those taking under the will as speedily as possible. *Humane Society of Austin & Travis County v. Austin Nat'l Bank*, 531 S.W.2d 574, 581 (Tex. 1975). The Wife sued the Mother to enforce her rights to recover her community property interest from Christopher's estate. The jury determined that the Mother willfully or with reckless disregard converted and wasted the Wife's community property. Based on these findings, the Wife was entitled to recovery of attorney's fees under section 245.

We overrule cross-point three.

### F. Summary

We reverse the summary judgment rendered in favor of the Mother, the Gosch Defendants, and the West Defendants with regard to the proceeds of the Prudential policy and reverse the trial court's denial of the Wife's summary judgment with regard to that same policy. We reverse the judgment of the trial court on the issue of the Wife's entitlement to a family allowance. We affirm the judgment of the trial court in all other respects. We remand this cause for further proceedings consistent with this opinion.

Justice MIRABAL dissenting.

MIRABAL, Justice, dissenting.

I disagree with the majority's resolution of five out of eleven points raised in this appeal. Accordingly, I dissent.

1. Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, et seq.

2. I note that, from the beginning of his employment at Houston Industries, Inc., the deceased had designated his estate as the beneficiary under each of his life insurance policies. There

### ERISA Plan Policies

As the majority opinion states, all parties agree that the three life insurance policies covering the deceased through his employment at Houston Industries, Inc. were part of an ERISA[1]-regulated employee benefit plan. Under ERISA, a plan administrator is required to administer the plan "in accordance with the plan documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The uncontroverted summary judgment evidence shows that the ERISA plan documents direct that proceeds of plan life insurance policies are payable to the beneficiary designated by the employee.

ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). Because designation of beneficiaries plainly relates to ERISA plans, state law is superseded. *Brandon v.. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir.1994); *Emmens v.. Johnson*, 923 S.W.2d 705, 707 (Tex.App.—Houston [1st Dist.] 1996, writ denied). Consequently, even if Texas law would, but for ERISA, mandate a different distribution, ERISA preemption requires us to follow federal law. *See Id.* Thus, because ERISA supersedes state law in the area of beneficiary designation, the Wife's claim for benefits based on state community property law is without merit.

Clearly, if the deceased had designated an individual as the beneficiary of his ERISA plan life insurance policies, that individual would be entitled to the life insurance proceeds free and clear of the Wife's state law claims. Here, the deceased designated his estate as the beneficiary;[2] thus, his estate is entitled to the life insurance proceeds, which are to be distributed in accordance with the deceased's will.[3] Community property law does not come into play.

Accordingly, the trial court properly granted the motion for summary judgment based

was no change of beneficiary designation at any time.

3. As noted by the majority opinion, the deceased's mother was the principal devisee under his will.

on ERISA. I would overrule points of error one, two, and four.

### Family Allowance

In points of error five and six, the Wife asserts that the trial court abused its discretion in denying her application for a family allowance and that the order of denial was against the great weight and preponderance of the evidence.

The Texas Probate Code provides for a family allowance, in appropriate cases, for the support of the surviving spouse and minor children of the deceased during the first year after the deceased's death. TEX.PROB. CODE ANN. § 286 (Vernon 1998). The amount of the allowance for the widow's and children's support is addressed to the trial court's discretion. *San Angelo Nat. Bank v. Wright,* 66 S.W.2d 804, 805 (Tex.Civ.App.— Austin 1934, writ ref'd). The widow's allowance must be made with reference to the widow's necessities measured by her condition in life and by what she had been accustomed to during the lifetime of the husband. TEX.PROB.CODE ANN. § 287 (Vernon 1980); *Kennedy v. Draper,* 575 S.W.2d 627, 629 (Tex.Civ.App.—Waco 1978, no writ).

The evidence showed that, at the time of the deceased's death, he and the Wife had been living apart for over a year; the Wife had neither sought nor received from the deceased any support for at least a year prior to his death;[4] the Wife was gainfully employed; and during the 12 months after the deceased's death, the Wife had received cash payments in excess of $50,000, yet her living expenses during that time amounted to $28,440. The evidence clearly supported the trial court's conclusion that the wife "failed to prove any necessity for a family allowance."

I would overrule points of error five and six.

I would affirm the trial court's judgment.

---

4. There were no children of the marriage. The wife had a child by a prior marriage and was entitled to child support from her prior husband.