

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-289-CV

ESTATE OF MITCHELL VAN METER,
DECEASED

------------

## FROM PROBATE COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In three issues, Mark Van Meter appeals from the probate court's order removing him as administrator of the estate of Mitchell Van Meter. Because we hold that the probate court had cause to remove Mark, we affirm the probate court's order.

Mitchell died intestate on July 4, 2007. Cody Van Meter is Mitchell's only child. Mark is Mitchell's brother.

---

[1] *See* Tex. R. App. P. 47.4.

Cody is a service member in the United States Navy. After his father's death, Cody was deployed overseas. After Cody's deployment, on February 11, 2008, Mark filed his application for letters of administration for Mitchell's estate. Cody did not sign a declination to serve. After holding a hearing on Mark's application on March 24, 2008, the probate court signed an order granting administration of the estate and appointing Mark as the administrator. No record was made of the hearing.

On April 14, 2008, Mark had a letter delivered to Tracy Olsen, Cody's mother and Mitchell's ex-wife, demanding payment of rent. On April 18, 2008, Cody filed an emergency motion for stay and suspension of the administration of the estate during his deployment. In the emergency motion, Cody alleged that Mark did not provide him with notice of Mark's application for appointment as administrator or of the hearing on the application. He requested the protections afforded service members on active duty, including a stay and suspension of the administration of the estate under the Soldiers and Sailors Relief Act.[2] Cody also sought to discharge Mark as administrator and requested an award of costs, expenses, and attorney's fees.

---

[2] *See* 50 U.S.C.A. app. §§ 501–96 (1990 & Supp. 2008), now called the Servicemembers Civil Relief Act.

On April 24, 2008, the probate court held a hearing on Cody's emergency motion. At the hearing, the court noted that the record did not include a declination to serve from Cody and that his court staff had attached a note to Mark's application that said, "[D]eclination for 21-year-old?" The probate court went on to say that although the court had no recollection of the hearing, "it would seem to [the court] that something was discussed during the creation of this administration that would have led this Court to believe that [Cody] was in favor of it, because otherwise, we would have required a written declination before we would—he has priority." The court continued, "[S]omething must have been said during that hearing that gave this Court the impression that [Cody] wanted [Mark] to be appointed or it wouldn't have happened." Just before ruling on Cody's motion, the probate court told Mark's attorney, "You know, sir, that we'd never do something like this if you hadn't led us to believe that this was an agreed situation." The court further told Mark's attorney, "I'm not accusing you of fraud, but I'm accusing you of coming right up to the edge" and that "[i]t is absolutely written in stone in the Probate Code that [Cody] has the . . . priority, and somehow or another, during that hearing, you-all led me to believe that this was agreed or I guarantee you it would've never been done." He concluded by saying, "And the idea that you didn't have his permission to do this, in my opinion—like I said, it comes close to fraud." At

no point in the hearing did Mark or his attorney deny that the court had been misled.

The probate court signed an order granting Cody's emergency motion "in its entirety," revoked and withdrew the letters of administration previously granted to Mark, and ordered Mark to pay Cody's attorney's fees in the amount of $2,269.00. Mark filed a motion for new trial, and, after the probate court denied the motion, he filed this appeal.

In his first issue, Mark argues that the order discharging him as administrator was signed outside the probate court's plenary power because it was signed thirty-one days after the court granted Mark's application for letters of administration. We disagree. Regardless of whether the probate court had plenary power to modify or correct the order appointing Mark, the court had the power to remove him while the estate was pending. A probate court retains jurisdiction over an estate until the estate is closed and the administrator is discharged.[3] Thus, the probate court had jurisdiction to issue an order

---

[3] *Walker v. Walker*, 152 S.W.3d 220, 223 (Tex. App.—Dallas 2005, no pet.); *Executors of Tartt's Estate v. Harpold*, 531 S.W.2d 696, 698 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Wybrants v. Lehman*, 307 S.W.2d 339, 341 (Tex. Civ. App.—Eastland 1957, writ ref'd n.r.e.); *see also Howard v. Bennett*, 13 Tex. 309, 1855 WL 4778, at *3–4 (1855) (noting that probate court had jurisdiction to remove adminstratrix and appoint successor where estate had not been closed).

pertaining to the estate.  We have found no time limitation for removal of an administrator during the pendency of an estate.[4]  We therefore hold that the probate court had jurisdiction to remove Mark as administrator when the estate had not been closed.  We overrule Mark's first issue.

In his second issue, Mark argues that a court cannot remove the administrator of an estate without (1) some evidence that the administrator engaged in some act or failed to perform some act which would warrant removal under section 222 of the Texas Probate Code or (2) an application for letters of administration by one who has a prior right under section 220(b) of the probate code.[5]  He contends that sections 220 and 222 are the only statutory provisions under which a court may remove an administrator.  But courts in this state have inherent powers in addition to those powers conferred upon them by statute.[6]  Under section 77 of the probate code, the probate

---

[4] *See, e.g.*, Tex. Prob. Code Ann. § 222 (Vernon 2003) (providing for the removal of an administrator and not including any time limit for doing so while the estate is being administered).

[5] *See id.* §§ 220(b), 222.

[6] *See Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988) (recognizing that "a court has inherent powers it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and *in preservation of its independence and integrity*") (emphasis added).

5

court was required to appoint Cody as administrator over Mark,[7] and if Cody

had filed an application to be appointed as administrator, the probate court

would have had to remove Mark and appoint Cody.[8]  The probate court noted

that the rule on priority of appointment was "written in stone" and stated that

it would not have appointed Mark instead of Cody if not for Mark's

misrepresentation to the court that Cody did not wish to serve and wished Mark

to do so.  The trial court equated this misrepresentation with "com[ing] close

to fraud."

A court of this state has the inherent power to prevent fraud being

perpetrated upon it.[9]  Furthermore, a probate court has the power "'to correct

errors arising out of fraud or mistake in its own decrees.'"[10]  And in *Fortson v.*

*Alford*, the Supreme Court of Texas stated that

> where a probate court has committed an error in its decisions,
> orders or judgments, or where the court has been imposed upon
> and induced to act by the deceit or fraud of a party, upon bill of

---

[7] *See* Tex. Prob. Code Ann. § 77(e) (requiring letters of administration to be granted to "the next of kin of the deceased, the nearest in order of descent first, and so on").

[8] *See id.* § 220(b).

[9] *See Trans-Pecos Land & Irrigation Co. v. Arno Co-operative Irrigation Co.*, 180 S.W. 928, 930 (Tex. Civ. App.—El Paso 1915, no writ).

[10] *Vance v. Upson*, 64 Tex. 266, 1885 WL 7171, at *2 (1885) (quoting *Waters v. Stickney*, 94 Mass. 1 (12 Allen 1), 1866 WL 4792, at *1 (1866)).

review, duly presented by a party at interest, the court has the power to correct the error, and annul all such acts as were procured by fraud.[11]

Thus, courts are not constrained to only remove an administrator on the grounds set out by statute, but may, through their inherent power, correct errors induced by fraud or deceit. Because a trial court has the power to remove an administrator when the administrator obtained that position by making a misrepresentation to or committing fraud on the court, we hold that the trial court did not err by removing Mark as administrator.[12] We overrule Mark's second issue.

In Mark's third issue, he argues that the probate court had no basis for assessing attorney's fees against him. Section 245 makes an administrator liable for attorney's fees incurred in removing the administrator if the administrator is removed for cause.[13] That section also allows for the recovery

---

[11] 62 Tex. 576, 1884 WL 8967, at *3 (1884).

[12] *See Cofer*, 754 S.W.2d at 124; *see also Nw. Nat'l Cas. Co. v. Doucette*, 817 S.W.2d 396, 397–98 (Tex. App.—Fort Worth 1991, writ denied) (noting that trial court had removed administratrix because of her fraud upon the court).

[13] Tex. Prob. Code Ann. § 245 (Vernon Supp. 2008) ("When a personal representative neglects to perform a required duty or if a personal representative is removed for cause, the personal representative . . . [is] liable for: . . . reasonable attorney's fees incurred in removing the personal representative or in obtaining compliance regarding any statutory duty the personal representative has neglected.").

of attorney's fees incurred in obtaining the administrator's compliance with a statutory duty he has neglected.[14] Mark argues that there was no evidence that he was removed for cause or that he neglected to perform any duty and that there was no other legal basis for awarding attorney's fees against him.

The question of whether a party is entitled to recover attorney's fees is a question of law, which we review de novo.[15] We will uphold a trial court's conclusion of law "if the judgment can be sustained on any legal theory supported by the evidence."[16]

We have found no case law addressing the propriety of attorney's fees in the removal of an administrator under facts similar to this case. We recognize that statutes providing for the recovery of attorney's fees must be strictly construed.[17] But section 245 does not specify "cause" to mean only the grounds listed in section 222,[18] and section 222 does not expressly define

---

[14] *Id.*

[15] *In re Estate of Hawkins*, 187 S.W.3d 182, 184–85 (Tex. App.—Fort Worth 2006, no pet.).

[16] *Id.* at 185.

[17] *Knebel v. Capital Nat'l Bank in Austin*, 518 S.W.2d 795, 804 (Tex. 1975).

[18] *Compare* Tex. Prob. Code Ann. § 245, *with*, *e.g.*, Tex. Educ. Code Ann. § 21.154 (Vernon 2006) (stating that teacher employed under continuing contract is entitled to continue in a position until teacher is, among other things,

the grounds it provides for removal as "cause."[19] The record shows that Cody

had a statutory right to be appointed administrator and that the probate court

would never have appointed Mark as administrator if he had not made a

misrepresentation to the court that went "right up to the edge" of fraud.

Cody's attorney gave testimony as to the reasonableness of the fees incurred

in bringing the action to remove Mark, and Mark does not challenge the

sufficiency of that evidence.[20] Because the probate court had cause to remove

Mark and evidence before it on which to base its award, we cannot say that it

erred by awarding attorney's fees.

Furthermore, courts of appeals have held that under section 245,

attorney's fees are assessed against a personal representative of an estate

when the representative is removed for cause or in an action to obtain the

representative's compliance with a statutory duty because it would be

inequitable to penalize the estate for the negligent or wrongful conduct of the

---

discharged for good cause "as defined by" subsequent section of code); *see also* Tex. Alco. Bev. Code Ann. § 102.71 (Vernon 2007) (defining "good cause" for purposes of subchapter); Tex. Ins. Code Ann. § 1551.003 (Vernon 2009) (defining "good cause" for purposes of chapter).

[19] Tex. Prob. Code Ann. § 222.

[20] *See Fillion v. Osborne*, 585 S.W.2d 842, 845 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) (stating that there must be evidence presented to enable court to determine what costs were incurred in obtaining order of removal).

representative.[21]  Our holding follows that policy.  We overrule Mark's third issue.

Having overruled Mark's three issues, we affirm the probate court's judgment.

                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED:  April 2, 2009

---

[21] *See Estate of Hawkins*, 187 S.W.3d at 185 ("These costs are appropriate assessments against the representative when she neglects her duties, as opposed to penalizing the estate, because the representative holds the property interests of the estate for others in this capacity."); *Barnett v. Barnett*, 985 S.W.2d 520, 534 (Tex. App.—Houston [1st Dist.] 1998) ("Costs and attorney's fees are assessed against the personal representative of an estate because of the inequities inherent in penalizing the estate when the representative neglects his or her duty."), *rev'd in part on other grounds by*, 67 S.W.3d 107 (Tex. 2001).