**Dora Ernestine Luck BARNETT, et al., Petitioners,**

v.

**Marleen Kovalchik BARNETT, Respondent.**

No. 99–0313.

Supreme Court of Texas.

Argued Jan. 12, 2000.

Decided Dec. 6, 2001.

Rehearing Overruled Feb. 14, 2002.

---

**32.** 156 Tex. 405, 297 S.W.2d 117, 119 (1956).

George W. Dana, Houston, Robin V. Dwyer, Seguin, Maria Angela Flores Beck, La Grange, for Petitioner.

Lois Watson, Watson & Watson, Luling, for Respondent.

Justice OWEN delivered the opinion of the Court in Parts I, II, III, and V, in which Justice HECHT, Justice ENOCH, Justice JEFFERSON, and Justice RODRIGUEZ joined, and an opinion in Part IV in which Justice HECHT, Justice JEFFERSON, and Justice RODRIGUEZ joined.

The principal issues in this case are whether a life insurance policy obtained through an employee benefit plan was community property and, if so, whether the Employee Retirement Income Security Act (ERISA) preempts a surviving wife's community property rights or the imposition of a constructive trust on policy proceeds to remedy a constructive fraud on the community. The court of appeals held that the policy was community property and that ERISA does not preempt the wife's state-law claims. While we agree that the policy was community property, we hold that the wife's claim for constructive fraud on the community and a constructive trust are preempted by ERISA. We accordingly reverse the court of appeals' judgment in part to eliminate recovery by Marleen Barnett of the proceeds of the policy at issue. The judgment of the court of appeals is otherwise affirmed, and this case is remanded to the trial court for further proceedings.

## I

There were a number of issues decided by the court of appeals that have not been pursued in this Court. We therefore set forth only the facts pertinent to the issues that we must resolve.

Christopher Barnett had been employed by a company formerly known as Houston Industries for eleven years when he married Marleen Barnett. The parties and the court of appeals referred to Christopher's employer as HL & P, which was a subsidiary of Houston Industries, and we follow their lead to avoid confusion. As part of an ERISA employee benefits plan, HL & P procured life insurance policies for Christopher throughout his employment. The first was a policy issued by Great Southern Life. That policy was allowed to expire after several years when HL & P changed carriers and the terms of coverage. HL & P obtained a new policy from Metropolitan Life. When Christopher and Marleen were married, that policy was in effect. During the marriage, however, that policy was not renewed by HL & P, and a new policy was issued by Metropolitan Life with different terms. Then, again during the marriage, HL & P did not renew the Metropolitan Life policy and instead procured insurance from Prudential Life Insurance Company. The Prudential policy, like the one it replaced, was a term life policy. The premiums for the Prudential policy were paid by deductions from Christopher's payroll.

While the Prudential policy was in effect, Christopher and Marleen began to experience marital discord, they separated, and divorce proceedings were commenced.

Christopher changed the beneficiary of the life insurance policy at issue from Marleen to his estate. He also executed a new will in which he named his mother Dora Barnett as the executrix and principal beneficiary of his estate. Other than a bequest to his sister of certain real property and a devise of $1.00 to each of his two children to be paid on their eighteenth birthdays, Christopher bequeathed his estate to his mother.

Before the divorce proceedings between Christopher and Marleen concluded, Christopher died. The Prudential policy proceeds were $169,770.93. There were other policies insuring Christopher's life, which together with the Prudential policy, totaled $637,955.93 in proceeds. Those other policies are not at issue in this Court. All proceeds were paid to Christopher's mother, Dora Barnett. Dora then made gifts to a number of family members and friends (none of whom were Christopher's children). Marleen brought suit asserting that the policies were community property, that Christopher committed a fraud on the community when he gave all the proceeds to Dora under his will, and that a constructive trust should be imposed on one half of all policy proceeds. Among Marleen's other claims was a request for a family allowance under the Texas Probate Code, and she sought to recover attorney's fees from Dora in connection with a claim that Dora had converted and wasted community property.

For ease of reference, we, like the court of appeals, will refer to the recipients of Dora's beneficence in groups, as the West defendants,[1] the Gosch defendants,[2] and

1. The West defendants received insurance proceeds as follows: $164,000 to Lisa Chavez–West; $164,000 to Lori Williams; $20,000 to Mark and Christy Misner; $10,000 to Charlotte Pett; $10,000 to Patricia Graham; and $5,000 to Russell Irvine, Sr. Lisa

Chavez–West transferred part of her proceeds to Carol Avant, among others.

2. The Gosch defendants are: Jerry Gosch, Nancy Gosch, Joe Gosch, and Alfred Gosch. Each received insurance proceeds of $10,000.

Dyess.[3] These defendants and Dora disputed all of Marleen's claims, except her claim for reimbursement of one half the community funds spent to pay the premiums on Christopher's insurance policies. The defendants contended that all the life insurance policies, including the Prudential policy, were Christopher's separate property. They further asserted that even if the policies were community property, Marleen's community property interest and her claim for fraud on the community were preempted by ERISA.

Marleen moved for partial summary judgment. She asked the trial court to declare that the policies were community property, that ERISA did not preempt her interest in the policies, and that a constructive fraud had been committed. Dora, the West defendants, and the Gosch defendants also moved for partial summary judgment with regard to the insurance policies, asserting that they were separate property and that ERISA preempted any community interest. The trial court denied Marleen's motion and granted the defendants' motions. The case then proceeded to a jury trial. At the close of Marleen's evidence, the trial court granted a directed verdict in favor of Dora on the constructive trust issue and for all defendants on all claims that had not been resolved by the partial summary judgment. The trial went forward on the remaining claims against Dora, and the jury found for Marleen on several claims that are not at issue in this Court. The trial court rendered judgment on that verdict and incorporated the prior partial summary judgments.

Marleen, Dora, the West defendants, and Dyess appealed. The court of appeals held that the policies that are not at issue in this Court were Christopher's separate property.[4] However, it reversed the trial court's judgment with regard to the Prudential policy.[5] The court of appeals held that the policy was community property,[6] and that ERISA did not preempt Marleen's claims.[7] The court then held that Christopher's gift of the proceeds of the Prudential policy to Dora was constructive fraud, and that Marleen was entitled to summary judgment against all defendants, jointly and severally, for one half the proceeds.[8] The court also concluded that section 286 of the Probate Code required the trial court to establish a family allowance for Marleen, and it remanded that claim to the trial court.[9] The court of appeals affirmed the award of attorney's fees to Marleen.[10] The remaining issues considered by the court of appeals were not raised in this Court, and we therefore will not unduly lengthen this opinion by recounting their disposition.

The Gosch defendants have settled their dispute with Marleen. However, Dora Barnett, the West defendants, and Dyess filed petitions for review in this Court, which we granted. We first consider whether the Prudential policy was separate or community property.

---

**3.** Ann Dyess received insurance proceeds in the amount of $10,700. Her grandson received $1,000.

**4.** *Barnett v. Barnett,* 985 S.W.2d 520, 528–29 (Tex.App.—Houston [1st Dist.] 1998, pet. granted).

**5.** *Id.* at 529.

**6.** *Id.* at 530.

**7.** *Id.* at 525–26.

**8.** *Id.* at 531.

**9.** *Id.* at 532.

**10.** *Id.* at 534–35.

## II

The facts in this case are undisputed. The Prudential policy was a term life policy issued during the marriage of Christopher and Marleen Barnett. It was not a renewal of the Great Southern or Metropolitan Life policies that had been issued when Christopher was single, nor was it a renewal of the second Metropolitan Life policy that was issued after Christopher married Marleen. The premiums on the Prudential policy were paid with community funds. Dora and Marleen agree that Christopher's employer was the actual owner of all the policies, but that Christopher was the beneficial owner.

 The Texas Family Code provides that "[c]ommunity property consists of the property, other than separate property, acquired by either spouse during marriage."[11] Separate property includes "the property owned or claimed by the spouse before marriage."[12] There is a presumption under the Family Code that property held during marriage is community property: "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property."[13] Generally, whether property is separate or community is determined by its character at inception, and this general rule applies to life insurance policies.[14] In *McCurdy*, an opinion adopted by this Court, the court of appeals was called upon to determine whether a life insurance policy was separate or community property. It held that the inception of title rule, "though arbitrary, is more conducive to uniformity and a degree of certainty."[15]

Applying the principles enunciated in *McCurdy* to this case, the Prudential policy is presumed to be community property because it was issued during the marriage of Christopher and Marleen.

Dora contends, however, that the Prudential policy was a mutation of the prior policies that Christopher had obtained through his employer when he was a single man. We disagree. The policies issued from time to time insuring Christopher's life had no value once they were terminated. They provided coverage only during the time that they were in effect. There was no property remaining when the policies terminated. The premiums that Christopher paid when he was a single man for the Great Southern and Metropolitan Life policies purchased coverage only for the time that those policies were in effect. When those policies were not renewed, there was nothing which could mutate into other separate property. When the Prudential policy was acquired during the marriage, it took effect from its inception date, not from an earlier date when Christopher was single. We therefore conclude that the Prudential policy was not a mutation of prior policies for purposes of marital property law. The court of appeals did not err in holding that the Prudential policy was community property.

We turn to the ERISA preemption issue.

## III

 Christopher Barnett's life insurance policy was part of an employee welfare benefit plan covered by ERISA.[16]

---

11. Tex. Fam.Code § 3.002.

12. *Id.* § 3.001.

13. *Id.* § 3.003(a).

14. *See McCurdy v. McCurdy,* 372 S.W.2d 381 (Tex.Civ.App.—Waco 1963, writ ref'd).

15. *Id.* at 384.

16. ERISA provides that an employee welfare benefit plan is one that provides life insurance or other enumerated benefits. *See* 29 U.S.C. § 1002(1) (1988).

ERISA requires an employee benefit plan to "specify the basis on which payments are made to and from the plan," [17] and the plan must be administered "in accordance with the documents and instruments governing the plan." [18] Administrators of employee benefit plans are directed to make payments to the "beneficiary" who is "designated by a participant, or by the terms of [the] plan." [19] ERISA preempts any state laws that "relate to" covered employee benefit plans: "[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." [20] State law is defined to "include[] all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." [21]

Under Texas law, Marleen Barnett has a cause of action for fraud on the community. Neither Dora nor any of the other defendants challenged the court of appeals' holding that a fraud on the community occurred in this case. Marleen's state-law remedy is to impose a constructive trust on one half of the proceeds of the Prudential policy that insured the life of her estranged husband. Dora Barnett and the other petitioners (hereinafter Dora, unless otherwise indicated) contend that Marleen's state-law claim is preempted by ERISA. Dora argues that federal law requires ERISA plans to be administered in accordance with the documents and instruments governing the plan. She asserts that the plan's administrator is therefore required by federal law to honor an em-

ployee's designation of a beneficiary. Thus, she contends, ERISA extinguishes all community property rights in a life insurance policy provided under an ERISA plan, and community property rights "do not spontaneously spring into being," she argues, after the life insurance proceeds are distributed as part of an estate. Dora asserts that the effect of ERISA is no different than if her son had designated her as the beneficiary of his life insurance policy rather than his estate. The result in either case, Dora contends, is that ERISA preempts community property rights.

Marleen counters that ERISA is not implicated since her husband's welfare benefit plan paid the life insurance proceeds to his designated beneficiary, which was her husband's estate, and her suit is against the executrix of the estate and those to whom the executrix then gave the policy proceeds, rather than against the ERISA plan administrator. The purposes of ERISA, Marleen argues, remain undisturbed because Congress had no interest in what happens to plan benefits once they are paid to a designated beneficiary.

Marleen's contention that there is no preemption because her suit is against the beneficiary of an employee benefit plan rather than the plan administrator is disposed of by *Boggs v. Boggs*. [22] The Supreme Court reasoned that preemption does not turn on whether state-law community property claims are asserted against the beneficiary after plan benefits have been disbursed rather than against the plan's administrator. [23] The Court held

**17.** 29 U.S.C. § 1102(b)(4) (1988).

**18.** *Id.* § 1104(a)(1)(D).

**19.** *Id.* § 1002(8).

**20.** *Id.* § 1144(a).

**21.** *Id.* § 1144(c)(1).

**22.** 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).

**23.** *Id.* at 854, 117 S.Ct. 1754.

that when there is a clash between community property rights and the purposes of ERISA, state-law rights are preempted even though they were asserted against the beneficiary of an ERISA plan after the plan's administrator had paid the benefits to the designated beneficiary.[24] The Court further explained that when there is preemption, "[r]eading ERISA to permit non-beneficiary interests, even if not enforced against the plan, would result in troubling anomalies." [25]

The question we must resolve, therefore, is whether Marleen's claim for fraud on the community "relate[s] to" her husband's employee benefit plan within the meaning of ERISA's general preemption provision.[26]

**A**

The United States Supreme Court has formulated a two-part inquiry to determine if there is preemption by virtue of the "relate to" provision. A state law relates to an employee benefit plan if it has (1) a connection with or (2) a reference to such a plan.[27] In spite of this formulation, the Supreme Court has said in recent years that the term "relate to" as used in ERISA's preemption clause is " 'unhelpful text.' " [28] In *Dillingham*, Justice Scalia

recounted the Court's struggle to bring clarity to the law in this area, noting that as of the date of that opinion, the Court had decided "no less than 14 cases to resolve conflicts in the Courts of Appeals regarding ERISA preemption" and had accepted two more ERISA preemption cases for decision that term.[29]

In *Dillingham*, the Court reviewed its holdings as to when a state law refers to a plan. In order to reference a plan, a state law must actually mention ERISA or plans covered by ERISA, depend on the existence of an ERISA plan, or act immediately and exclusively on ERISA plans.[30] Based on these precedents, we have no difficulty in concluding that a common-law cause of action for constructive fraud when one spouse has transferred a disproportionate share of community property to someone other than his or her mate does not have reference to an employee benefit plan. Nor does a common-law cause of action for constructive fraud expressly mention ERISA or ERISA plans, depend on the existence of an ERISA plan, or act exclusively on ERISA plans.

Whether a state law has a "connection with" a covered employee benefit plan is a more complex inquiry. To place meaningful limits on preemption in determining if a

---

**24.** *Id.* at 844, 117 S.Ct. 1754.

**25.** *Id.* at 850, 117 S.Ct. 1754.

**26.** The general preemption provision says:
[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
29 U.S.C. § 1144(a) (1988).

**27.** *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

**28.** *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791

(1997) (quoting *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).

**29.** *Dillingham*, 519 U.S. at 334–35, 117 S.Ct. 832 (Scalia, J., concurring).

**30.** *Id.* at 324–25, 117 S.Ct. 832 (citing *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)).

state law has a connection with an employee benefit plan, the Supreme Court has directed courts to look to the objectives of ERISA and the nature of the effect of the state law on ERISA plans.[31]

## B

Were we to decide this case without the benefit of the United States Supreme Court's recent decision in *Egelhoff*,[32] we would be inclined to conclude that based on the prior decisions in *Mackey v. Lanier Collection Agency & Service, Inc.*,[33] *Guidry v. Sheet Metal Workers National Pension Fund*,[34] and *Boggs v. Boggs*,[35] Marleen Barnett's claim for fraud on the community and correspondingly a constructive trust is not preempted by ERISA. Those cases explain that there is a difference for preemption purposes between benefits that can be alienated and those that cannot. Under ERISA pension plan benefits are subject to anti-alienation provisions,[36] but welfare benefits are not. Life insurance policies provided pursuant to an employee benefit plan are welfare plan benefits, not pension plan benefits, and ERISA's anti-alienation provisions do not apply.[37]

In *Mackey*, two Georgia statutes were examined by the Supreme Court. The first[38] expressly barred garnishment of benefits of an employee benefit plan that was subject to ERISA.[39] The second was Georgia's general garnishment statute.[40] The Supreme Court held that the more specific statute exempting ERISA plan benefits from garnishment was preempted, even though it may have been enacted to effectuate ERISA's purposes.[41] The Court held that the "state statute's express reference to ERISA plans suffices to bring it within the federal law's preemptive reach."[42] But the Court held that Georgia's general garnishment statute was not preempted to the extent that it applied to welfare benefit plans as distinguished from pension benefit plans. The Supreme Court rejected the argument that because garnishment would subject plan administrators to substantial burdens and costs,

---

**31.** *See Egelhoff v. Egelhoff*, 532 U.S. 141, 146, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001); *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832; *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671.

**32.** *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001).

**33.** 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

**34.** 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).

**35.** 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).

**36.** 29 U.S.C. § 1055 (1988) (prohibiting the designation of someone other than the spouse for certain benefits without the written consent of that spouse); 29 U.S.C. § 1056(d)(1) (1988) (directing that "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated").

**37.** *See* 29 U.S.C. § 1002(1) (1988); *see also Equitable Life Assurance Soc'y of U.S. v. Crysler*, 66 F.3d 944, 948 (8th Cir.1995); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1324 (5th Cir.1994), *cert. denied* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635.

**38.** Ga.Code Ann. § 18–4–22.1 (1982) (repealed 1990).

**39.** *Mackey*, 486 U.S. at 828, 108 S.Ct. 2182.

**40.** Ga.Code Ann. § 18–4–20 *et seq.* (1982 and Supp.1987).

**41.** *Mackey*, 486 U.S. at 829–30, 108 S.Ct. 2182 (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (explaining that express preemption under ERISA "includ[es] state laws that are consistent with ERISA's substantive requirements")).

**42.** *Id.* at 830.

the general statute "related to" ERISA benefit plans. In reaching that conclusion, the Court looked to the structure and purposes of ERISA.

First, the Supreme Court concluded that creditors of the plan itself could use the state-law remedy of garnishment to collect judgments for claims such as unpaid rents and some torts.[43] The Court saw no basis in the express provisions of ERISA for distinguishing between claims against plan funds generally and funds that would be paid to a particular participant in a plan at a particular time, even though garnishment meant that a participant would not receive his or her benefits.[44] Second, the Supreme Court concluded that when Congress intended to foreclose a particular type of state-law enforcement of judgments against employee benefits, it had done so expressly.[45] The Court pointed to the anti-alienation provisions of ERISA that prohibit the alienation or assignment of benefits under *pension* plans.[46] The Court noted that there are no similar provisions that prohibit the assignment or alienation of benefits under *welfare* benefit plans.[47] The benefits at issue in *Mackey* were provided under welfare benefits plans, not pension plans. The Supreme Court concluded that construing ERISA's preemption provision to prohibit garnishment of all ERISA plan benefits would render the anti-alienation provision directed solely at pension plan benefits superflu-

ous.[48] Thus, the Court held that the express preemption provision in ERISA did not preempt general garnishment laws. Only the anti-alienation provision preempted state-law garnishment statutes, and then only to the extent that state law applied to pension plans as distinguished from welfare plans.

The Supreme Court extended its rationale to constructive trusts in *Guidry*.[49] The Court also reaffirmed that it was the anti-alienation provisions of ERISA that preempted state law from imposing a constructive trust on pension plan benefits, but that there was no such preemption with regard to welfare plan benefits:

> Both the District Court and the Court of Appeals presumed that [the anti-alienation provision] of ERISA erects a general bar to the garnishment of pension benefits from plans covered by the Act. This Court, also, indicated as much, although in dictum, in *Mackey*.... In *Mackey* the Court held that ERISA does not bar the garnishment of welfare ... benefits. In reaching that conclusion, it noted that [the anti-alienation provision] proscribes the assignment or alienation of pension plan benefits, but that no comparable provision applies to ERISA welfare benefit plans.[50]

The Court saw no difference between a writ of garnishment and the remedy of constructive trust.[51] In *Guidry*, the chief executive officer of a union had embezzled

---

**43.** *Id.* at 833.

**44.** *Id.* at 835.

**45.** *Id.* at 836.

**46.** *Id.*

**47.** *Id.*

**48.** *Id.* at 837.

**49.** *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).

**50.** *Id.* at 371, 110 S.Ct. 680 (emphasis in original).

**51.** *Id.* at 372, 110 S.Ct. 680 ("We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case. That remedy is therefore prohibited by [the anti-alienation provision].").

union funds, and the union obtained a sizable judgment against him. The union official was eligible to receive benefits under his pension plans, and the union sought to impose a constructive trust on those benefits. The Supreme Court held that ERISA's anti-alienation provision foreclosed that remedy because pension plan rather than welfare plan benefits were at issue.[52]

Subsequently, in *Boggs*[53] the United States Supreme Court again noted the distinction between pension plan and welfare plan benefits in holding that the community property rights of an employee's deceased first wife in pension plan benefits were preempted by ERISA. The Court awarded the pension plan benefits to the second, surviving wife rather than the children of the first marriage. The Supreme Court's conclusion that ERISA preempted the first wife's community property rights was based in part on ERISA's requirement that a surviving spouse must be the beneficiary of certain pension plan benefits unless that spouse waives those benefits in writing.[54]

It would seem that under *Mackey* and *Guidry*, state laws can impose a constructive trust on welfare plan benefits as long as those state laws have general applicability and do not have "a connection" with ERISA benefit plans. Marleen insists that we must focus on the remedy of constructive trust and that ERISA does not preempt that state-law remedy. But the remedy that Marleen seeks rests on her underlying community property rights. The fundamental question is not whether

ERISA preempts a constructive trust, but whether Texas community property laws that give rise to a claim for fraud on the community in this case "relate to any employee benefit plan." [55] We conclude, in the words of the *Egelhoff* decision, that "unlike generally applicable laws regulating 'areas where ERISA has nothing to say,' which we have upheld notwithstanding their incidental effect on ERISA plans, this [state law] governs the payment of benefits, a central matter of plan administration." [56] We further conclude based on *Egelhoff* that the state law at issue "has a prohibited connection with ERISA plans because it interferes with nationally uniform plan administration.... Uniformity is impossible ... if plans are subject to different legal obligations in different States." [57]

In *Egelhoff*, David Egelhoff obtained a divorce but did not change the designation of his former wife as the beneficiary of a life insurance policy. Upon Egelhoff's death, his ERISA plan administrator paid the policy proceeds to his former wife. His children then sued her to recover those proceeds. The Egelhoff children relied on a state statute that revoked a designation of a spouse as the beneficiary of a life insurance policy upon divorce. The Supreme Court held that ERISA preempts state law in this regard.[58] The Court reasoned that the state law was at odds with ERISA's directives that a plan administrator must make payments to the beneficiary designated by the plan participant:

---

**52.** *Id.* at 376–77, 110 S.Ct. 680.

**53.** 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).

**54.** *Id.* at 842, 117 S.Ct. 1754.

**55.** 29 U.S.C. § 1144(a) (1988).

**56.** *Egelhoff v. Egelhoff*, 532 U.S. 141, 147, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001).

**57.** 532 U.S. at 148, 121 S.Ct. at 1328.

**58.** 532 U.S. at 146, 121 S.Ct. at 1327.

In particular, [the Washington statute] runs counter to ERISA's commands that a plan shall "specify the basis on which payments are made to and from the plan," § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." § 1002(8).[59]

The Supreme Court further reasoned that one of the primary goals of ERISA is uniformity and that "[u]niformity is impossible, however, if plans are subject to different legal obligations in different States."[60] The Court then concluded that uniformity was threatened because plan administrators could not rely on a beneficiary designation but would instead have to learn state laws.[61] The burden on administrators would be compounded when the employer, plan participant, and the participant's former spouse were each in a different state.[62] The goals of ERISA would be undermined, the Court concluded:

> Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of "minimiz[ing] their administrative and financial burden[s]." ... [D]iffering state regulations affecting an ERISA plan's "system for processing claims and paying benefits" impose "precisely the burden that ERISA pre-emption was intended to avoid."[63]

The Court's determination that state law was preempted was unaffected by the fact that the plan administrator in *Egelhoff* had already paid the proceeds to David Egelhoff's former wife, and that the suit was against her, not the plan administrator.

Nor was it an answer, the Supreme Court reasoned, that the state statute protected an administrator who made payments to a former spouse without actual knowledge that the marriage had been dissolved. First, an administrator faces the risk that it could be found to have actual knowledge of the divorce.[64] Second, if the administrator awaited the results of litigation before making payment, the costs of delay, uncertainty, and litigation would ultimately be borne by the beneficiaries: "If they instead decide to await the results of litigation before paying benefits, they will simply transfer to the beneficiaries the costs of delay and uncertainty."[65] The Supreme Court concluded that one of ERISA's purposes is efficient, low-cost administration of employee benefit plans, and that purpose would be frustrated:

> The dissent observes that the Washington statute permits a plan administrator to avoid resolving the dispute himself and to let courts or parties settle the matter. This observation only presents an example of how the costs of delay and uncertainty can be passed on to beneficiaries, thereby thwarting ERISA's objective of efficient plan administration.[66]

The Supreme Court was cognizant of the "presumption against pre-emption in areas of traditional state regulation such as fami-

---

**59.** 532 U.S. at 147, 121 S.Ct. at 1327–28.

**60.** 532 U.S. at 148, 121 S.Ct. at 1328.

**61.** 532 U.S. at 148, 121 S.Ct. at 1328.

**62.** 532 U.S. at 148, 121 S.Ct. at 1328.

**63.** 532 U.S. at 149, 121 S.Ct. at 1328.

**64.** 532 U.S. at 149, 121 S.Ct. at 1328.

**65.** 532 U.S. at 149, 121 S.Ct. at 1328.

**66.** 532 U.S. at 149, 121 S.Ct. at 1328 n. 3 (citations omitted).

ly law." [67] But the Court held "that presumption can be overcome where, as here, Congress has made clear its desire for preemption." [68]

## C

The United States Supreme Court said in *Egelhoff* that it granted the petition for certiorari in that case to resolve a conflict between decisions finding preemption, which the Court identified as federal Circuit Court decisions in *Manning v. Hayes*,[69] and *Metropolitan Life Insurance. Co. v. Hanslip*,[70] and decisions finding no preemption, which the Court identified [71] as the Ninth Circuit's opinion in *Emard v. Hughes Aircraft Co.*,[72] and the Washington Supreme Court's decision in *Egelhoff*.[73] The United States Supreme Court resolved the conflict in favor of *Manning* and *Hanslip*. Although neither *Manning* nor *Hanslip* concerned community property law, *Emard* did.

In both *Manning* and *Hanslip*, the decedent had failed to change the beneficiary designation after divorce, and the dispute was between the decedent's former wife as the designated beneficiary and the decedent's estate. Neither the heirs nor the former wife asserted community property claims. The heirs relied on state statutes that voided the designation of a former spouse as beneficiary. Both courts held that these state laws were preempted, and the former spouse was entitled to the proceeds.[74]

In *Emard*, two state statutes specifically addressed and purported to void nonprobate transfers of community property without the written consent of the affected spouse. The court in *Emard* held that the surviving spouse's common-law and statutory community property rights were not preempted. The Supreme Court's decision in *Egelhoff* decision implicitly rejected the result and the reasoning in *Emard*, in which the Ninth Circuit embraced many of the arguments that Marleen Barnett advances in this case.

In *Emard*, the decedent had been divorced and had remarried. Gary Emard, her surviving husband, contended that his wife had failed to change the beneficiary of her life insurance policy before her death by mistake, and that in the absence of that mistake, he would be entitled to all the proceeds under California law.[75] He sought a constructive trust on those proceeds. Relying on *Mackey* and *Guidry*,[76] the Ninth Circuit held that "ERISA does not preempt California law permitting the imposition of a constructive trust on insurance proceeds after their distribution to the designated beneficiary." [77]

---

**67.** 532 U.S. at 151, 121 S.Ct. at 1329.

**68.** 532 U.S. at 151, 121 S.Ct. at 1329.

**69.** 212 F.3d 866 (5th Cir.2000).

**70.** 939 F.2d 904 (10th Cir.1991).

**71.** *Egelhoff,* 532 U.S. at 147, 121 S.Ct. at 1327.

**72.** 153 F.3d 949 (9th Cir.1998), *cert. denied* 525 U.S. 1122, 119 S.Ct. 903, 142 L.Ed.2d 902.

**73.** 139 Wash.2d 557, 989 P.2d 80 (1999).

**74.** *See Manning,* 212 F.3d at 870 ("[A] state law governing the designation of an ERISA beneficiary 'relates to' the ERISA plan and is therefore preempted." (citations omitted)); *Hanslip,* 939 F.2d at 906 ("Because the designation of beneficiaries to this life insurance policy 'relates to' the ERISA plan, the preemption provision applies." (citations omitted)).

**75.** *Emard,* 153 F.3d at 954 (citing Cal. Prob. Code § 6401(a)).

**76.** *Id.* at 954–55.

**77.** *Id.* at 955.

Emard also contended that even if his wife intended to maintain her former husband as the beneficiary, California community property laws, both common-law and statutory, entitled him to half the proceeds. The Ninth Circuit agreed with Emard that under California common law, a spouse has a community property interest in the proceeds of a life insurance policy obtained with community funds.[78] The other spouse cannot defeat that interest by naming a third party as beneficiary without the consent of his or her mate.[79] The Ninth Circuit also recognized that at least three California statutes gave a spouse such as Emard the right to recover his or her community interest in the proceeds when the other spouse died after naming a third party as beneficiary.[80] These included a statute that prohibited a spouse from making a gift of community property without the consent of the other spouse,[81] and two statutes that invalidated and set aside a nonprobate transfer of a spouse's interest in community property unless that spouse had consented in writing to the transfer.[82] The Ninth Circuit held that ERISA did not preempt any of these state laws granting and protecting Emard's community property interest in the proceeds of the policies insuring his wife's life.[83]

The Ninth Circuit concluded that the community property laws in question did not conflict with any specific ERISA provision,[84] that California law would not frustrate any of ERISA's purposes,[85] and that Congress had not indicated an intent to occupy the field so completely that these California laws were preempted.[86]

As noted above, the arguments that carried the day in *Emard* are strikingly similar to those advanced by Marleen Barnett in this case. But the United States Supreme Court was unpersuaded by the rationale of *Emard.* The United States Supreme Court concluded that a state law that would have the direct or indirect effect of causing a plan administrator to pay other than in accordance with plan documents is preempted. The Supreme Court resolved the conflict between *Emard* and other decisions in favor of the holdings in *Manning* and *Hanslip.* *Manning* held that there was "no doubt" that ERISA preempted a Texas statute rendering a life insurance beneficiary designation of no effect after divorce.[87] *Hanslip* held that ERISA preempted a similar Oklahoma statute.[88]

### D

A host of other federal circuit court decisions have held that ERISA preempts state marital property laws, including divorce decrees that are not "qualified domestic relations orders" (QDROs) within the meaning of ERISA,[89] that purport to

**78.** *Id.* at 955–56 (citing *Life Ins. Co. of North Am. v. Cassidy,* 35 Cal.3d 599, 200 Cal.Rptr. 28, 676 P.2d 1050, 1053 (1984)).

**79.** *Id.* at 955.

**80.** *Id.* at 955–56 n. 8.

**81.** *Id.* (citing Cal. Fam.Code § 1100(b)).

**82.** *Id.* (citing Cal. Prob.Code §§ 5020, 5021(a)).

**83.** *Id.* at 961.

**84.** *Id.* at 958.

**85.** *Id.* at 958–60.

**86.** *Id.* at 961.

**87.** *Manning,* 212 F.3d at 870.

**88.** *Hanslip,* 939 F.2d at 906.

**89.** 29 U.S.C. §§ 1144(b)(7), 1056(d)(3)(B)(i) (1994 & Supp. V 1999).

resolve competing claims to ERISA life insurance proceeds.[90] Two of these decisions, *Brown*[91] and *Pettit*,[92] involved claims similar to Marleen's. A divorce decree required the former husband to maintain life insurance designating his former wife as beneficiary. He did not comply. He named his new wife as beneficiary. Upon the husband's death, his former wife sued, attempting to erect a constructive trust on the life insurance proceeds. The courts in each case held that the divorce decree was preempted by ERISA because it was not a qualified domestic relations order (QDRO) under ERISA.[93] The constructive trust claims were preempted as well. The court in *Pettit* explained that it had "no trouble determining that the constructive trust claim, which is based upon the terms of a property settlement agreement entered to effect a property division upon divorce, meets the ERISA definition of state law," [94] and had "a connection with an ERISA plan." [95]

These decisions are consistent with the United States Supreme Court's decision in *Free v. Bland*,[96] although it did not concern ERISA. In that case, a husband and wife purchased United States savings bonds with community funds. The bonds would have been community property under Texas law, but a federal treasury regulation provided that when one co-owner died, the other would become the " 'sole and absolute owner.' " [97] Upon the death of the wife, her son from a prior marriage sued the surviving husband for an accounting and obtained a judgment for one-half the value of the bonds. The United States Supreme Court held that the federal regulations preempted Texas community property law.[98] It further held that the son could not circumvent that preemption by obtaining a judgment for one-half the val-

90. See *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir.2000); *Metropolitan Life Ins. Co. v. Pettit*, 164 F.3d 857 (4th Cir.1998); *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 420 (6th Cir.1997); *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 129–30 (6th Cir.1996), *cert. denied* 520 U.S. 1263, 117 S.Ct. 2431, 138 L.Ed.2d 193; *Estate of Altobelli v. Int'l Bus. Machs. Corp.*, 77 F.3d 78, 81–82 (4th Cir. 1996); *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir.1994); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir.1994), *cert. denied* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635; *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14 (2d Cir. 1993); *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1195 (11th Cir.1991); *McMillan v. Parrott*, 913 F.2d 310, 311–12 (6th Cir.1990); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 281 (7th Cir.1990), *cert. denied* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41; *see also Hill v. AT&T Corp.*, 125 F.3d 646, 648 (8th Cir.1997) (holding, without finding preemption, that under federal common law, a former spouse can waive the right to enforce the designation as beneficiary); *Mohamed v. Kerr*, 53 F.3d 911, 916 (8th Cir.1995), *cert. denied* 516 U.S. 868, 116 S.Ct. 185, 133 L.Ed.2d 123 (holding that federal common law applied and there was a waiver without finding preemption); *MacLean v. Ford Motor Co.*, 831 F.2d 723, 728 (7th Cir.1987) (holding that designation of plan beneficiaries was preempted); *Emmens v. Johnson*, 923 S.W.2d 705, 710 (Tex.App.—Houston [1st Dist.] 1996, pet. denied); *but see BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 829 (9th Cir. 2000) (holding that state law regarding substantial compliance was not preempted and giving effect to attempt at changing beneficiary of pension plan benefits).

91. 934 F.2d 1193 (11th Cir.1991).

92. 164 F.3d 857 (4th Cir.1998).

93. 29 U.S.C. § 1144(b)(7) (Supp. V 1999).

94. *Pettit*, 164 F.3d at 861.

95. *Id.* at 862.

96. 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962).

97. *Id.* at 665, 82 S.Ct. 1089.

98. *Id.* at 670, 82 S.Ct. 1089.

ue of the bonds rather than title to a one-half interest in the bonds themselves:

> Notwithstanding this provision, the State awarded full title to the co-owner but required him to account for half of the value of the bonds to the decedent's estate. Viewed realistically, the State has rendered the award of title [by the federal regulations] meaningless.... If the State can frustrate the parties' attempt to use the bonds' survivorship provision through the simple expedient of requiring the survivor to reimburse the estate of the deceased co-owner as a matter of law, the State has interfered directly with a legitimate exercise of the power of the Federal Government to borrow money.[99]

We note, however, that at least one federal circuit court has held that ERISA did not preempt a divorce decree that was not a QDRO and that a state law claim for tortious interference with that decree survived.[100] In *Crysler*, a decree required the former husband to maintain his former wife as the beneficiary of a life insurance policy. He instead named his second wife as beneficiary. Upon his death, the first wife sued, contending that the second wife had tortiously interfered with the divorce decree by inducing the deceased to change the beneficiary designation. The Eighth Circuit held that "the fact that, if successful, the [former wife's] claim may ultimately be satisfied out of ERISA plan benefits seems a wholly inadequate basis to preempt the claim."[101]

In the case before us today, had Christopher Barnett survived until divorce proceedings were concluded, Marleen could have obtained a decree that qualified as a QDRO under ERISA. That decree would have effected a fair and just property division and could have dealt directly with the Prudential life insurance policy.[102] Because Christopher did not survive, Marleen is relegated to a claim for constructive fraud on the community. Although preemption might result in an anomaly in this case, the reasoning in United States Supreme Court's decision *Egelhoff* compels us to conclude that Marleen's claim is based on state law that has a connection with an ERISA plan and is accordingly preempted. That conclusion is also consistent with the reasoning in *Free v. Bland* and the federal circuit court decisions in *Brown* and *Pettit*.

## IV

A few courts have recognized the inequities that can result from preemption of state marital property law, particularly when ERISA preempts a state statute that revokes the designation of a spouse as beneficiary upon divorce, or when a divorce decree does not qualify as a QDRO.[103] Those courts have applied federal com-

---

**99.** *Id.* at 669, 82 S.Ct. 1089; *see also Boggs v. Boggs,* 520 U.S. 833, 852–53, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (holding that ERISA preempts community property rights in pension plan benefits and that a pension plan participant cannot be required by state law to account for a deceased spouse's community property interest in pension plan proceeds).

**100.** *Equitable Life Assurance Soc'y of U.S. v. Crysler,* 66 F.3d 944, 948–49 (8th Cir.1995).

**101.** *Id.* at 949.

**102.** *See generally Metropolitan Life Ins. Co. v. Wheaton,* 42 F.3d 1080 (7th Cir.1994); *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114 (10th Cir.1991).

**103.** *See Manning v. Hayes,* 212 F.3d 866, 872 (5th Cir.2000); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326 (5th Cir.1994), *cert. denied* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635; *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 281 (7th Cir.1990), *cert. denied* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41; *see also Estate of Altobelli v. Int'l Bus. Machs. Corp.,* 77 F.3d

mon law to ameliorate those inequities.[104] Federal common law regarding waiver is most typically applied. Some courts have sought to determine whether the former spouse waived his or her interest in plan benefits under the terms of a divorce decree, even though the decree was not a QDRO.[105] However, the Second and Sixth Circuits have held that a beneficiary designation in plan documents governs and that federal common law cannot be applied to override that designation.[106]

*Egelhoff* did not expressly resolve the division among these authorities. The question of whether there was a waiver under federal common law was raised in the lower state courts, but was not directly addressed by either the Washington Supreme Court or the United States Supreme Court. The United States Supreme Court reversed the judgment of the Washington Supreme Court in *Egelhoff* and remanded for further proceedings "not inconsistent" with the United States Supreme Court's decision.[107] The United States Supreme Court did not expressly say whether the Washington state courts could still determine that the deceased's former wife, Samantha Egelhoff, waived her rights to policy proceeds under federal common law and that the life insurance proceeds must be paid to the children of her former husband.

■ In other ERISA contexts, federal courts have recognized that although Congress 'intended that the courts would "develop a 'federal common law of rights and obligations under ERISA-regulated plans,' " ' [108] they have also recognized that federal common law must be applied only "when it is 'necessary to effectuate the

---

78, 81–82 (4th Cir.1996) (declining to decide if a decree was a QDRO, but holding that waiver in decree was effective to override ERISA beneficiary designation); *Emmens v. Johnson*, 923 S.W.2d 705, 710 (Tex.App.— Houston [1st Dist.] 1996, pet. denied).

**104.** *See id.; see also Hill v. AT&T Corp.*, 125 F.3d 646, 648 (8th Cir.1997) (holding, without finding preemption, that under federal common law, a former spouse can waive the right to enforce the designation as beneficiary); *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 562 (4th Cir.1994) (holding that state law regarding substantial compliance was preempted, but applying federal common law regarding substantial compliance).

**105.** *See Manning*, 212 F.3d at 874–76; *Hill*, 125 F.3d at 649–50; *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1327 (5th Cir.1994), *cert. denied* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635; *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 280–81 (7th Cir.1990), *cert. denied* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41; *see also Clift v. Clift*, 210 F.3d 268, 272 (5th Cir.2000) (holding that although there was no QDRO there was an effective waiver); *Estate of Altobelli v. Int'l Bus. Machs. Corp.*, 77 F.3d 78, 81–82 (4th Cir.1996) (declining to decide

if a decree was a QDRO, but holding that waiver in decree was effective to override ERISA beneficiary designation); *Mohamed v. Kerr*, 53 F.3d 911, 916 (8th Cir.1995), *cert. denied* 516 U.S. 868, 116 S.Ct. 185, 133 L.Ed.2d 123 (holding that federal common law applied and there was a waiver without finding preemption); *Emmens v. Johnson*, 923 S.W.2d 705, 710 (Tex.App.—Houston [1st Dist.] 1996, pet. denied). ·

**106.** *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 420 (6th Cir.1997); *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir.1996), *cert. denied* 520 U.S. 1263, 117 S.Ct. 2431, 138 L.Ed.2d 193; *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14–15 (2d Cir. 1993); *McMillan v. Parrott*, 913 F.2d 310, 311–12 (6th Cir.1990).

**107.** *Egelhoff v. Egelhoff*, 532 U.S. 141, 152, 121 S.Ct. 1322, 1330, 149 L.Ed.2d 264 (2001).

**108.** *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *see also Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir.1990).

purposes of ERISA,' " [109] and cannot be fashioned or applied to conflict with ERISA's statutory provisions or threaten to override the explicit terms of an established ERISA benefit plan.[110] For example, some federal courts have recognized that a federal common-law formulation of unjust enrichment may be applicable.[111] In *Provident Life*, a plan administrator was permitted to recover sums advanced to an employee under the terms of the plan to pay medical expenses she incurred from an accident that was unrelated to her work, even though she did not agree in writing, as contemplated in the plan, to repay those sums.[112] But the court in *Provident Life* recognized that unjust enrichment should be not be utilized to override a contractual provision in an employee benefit plan.[113] And courts cannot create rights "under the rubric of federal common law" to thereby " 'use state common law to re-write a federal statute.' " [114]

In construing federal statutes or regulations other than ERISA, there is authority from the United States Supreme Court that a spouse in a community property state may have recourse under federal common law if his or her community property was disposed of by the other spouse in a fraudulent manner even if state law is preempted. The Supreme Court said in *Free v. Bland* that federal preemption of marital property law should not result in "a 'sanctuary for a wrongdoer's gains.' " [115] It continued, "The regulations are not intended to be a shield for fraud, and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto on the part of a husband while acting in his capacity as manager of the general community property." [116] Federal fraud law, rather than state law, would be applicable in such a case.[117]

Subsequently, in another case involving federal savings bonds, the Supreme Court held in *Yiatchos v. Yiatchos*[118] that under federal common law, a widow might be able to show fraud or breach of trust by her husband when he purchased bonds with community funds and made them payable upon his death to his brother.[119] The Court subsequently reaffirmed but distinguished *Yiatchos* in *Ridgway v. Ridgway*,[120] which concerned a serviceman's designation of a beneficiary of a life insurance policy issued pursuant to the Servicemen's Group Life Insurance Act of 1955. A state divorce decree required the serviceman to maintain this policy in effect for the benefit of his three children. He did not comply, but instead named his new wife as the beneficiary. Upon his death,

**109.** *Singer,* 964 F.2d at 1452 (quoting *Provident Life,* 906 F.2d at 992).

**110.** *Id.*

**111.** *See, e.g., Provident Life,* 906 F.2d at 993.

**112.** *Id.*

**113.** *Id.* at 992–93; *see also Cummings By Techmeier v. Briggs & Stratton,* 797 F.2d 383, 390 (7th Cir.1986); *Van Orman v. American Ins. Co.,* 680 F.2d 301, 312 (3d Cir.1982).

**114.** *Provident Life,* 906 F.2d at 992 (quoting *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986)).

**115.** 369 U.S. 663, 670, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (citation omitted).

**116.** *Id.*

**117.** *Id.* at 670–71, 82 S.Ct. 1089.

**118.** 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964).

**119.** *Id.* at 308–09, 84 S.Ct. 742.

**120.** 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981).

his former wife claimed the proceeds under the divorce decree. The Supreme Court held that state law, including the divorce decree, was preempted.[121] The Court relied upon a provision in the federal statute that said the proceeds of a policy were to be paid to the beneficiary designated by the serviceman.[122] The Court also relied, however, on an anti-attachment provision in the federal statute that shielded benefits from taxes, claims of creditors, attachment, levy and seizure.[123]

While these authorities provide some support for Marleen Barnett's position, we are bound to follow the United States Supreme Court's most recent pronouncement of the preemptive effect of ERISA. We cannot extrapolate from decisions construing other statutes when to do so would contravene what the Supreme Court has said in construing ERISA. The decision in *Egelhoff*[124] identified specific goals and concerns of ERISA and concluded that state family law was preempted.

The state law embodied in the statute at issue in *Egelhoff* was far easier for a plan administrator to discern and follow and far less fact intensive in applying than the community property law of Texas that gives rise to a claim for a constructive trust. The state statute under scrutiny in *Egelhoff* provided in a straightforward manner that upon divorce, the designation of a former spouse as the beneficiary of a life insurance policy was automatically revoked.[125] But the United States Supreme Court nevertheless concluded that this statute "interferes with nationally uniform plan administration." [126] The Court concluded that the state law clashed with one of "the principal goals of ERISA," which is " 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.' " [127] The state law threatened the purposes of ERISA because "[p]lan administrators cannot make payments simply by identifying the beneficiary specified by the plan documents." [128] The state law also impermissibly burdened plan administrators because they would have to familiarize themselves with state statutes so that they could determine whether the named beneficiary's status had been " 'revoked' by operation of law." [129] If administrators decide "to await the results of litigation before paying benefits, they will simply transfer to the beneficiaries the costs of delay and uncertainty." [130] The Court con-

**121.** *Id.* at 55, 102 S.Ct. 49.

**122.** *Id.* at 53, 102 S.Ct. 49.

**123.** *Id.*

**124.** *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001).

**125.** The Washington statute said:

If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.

*Egelhoff*, 532 U.S. at 144, 121 S.Ct. at 1326 (quoting WASH. REV.CODE § 11.07.010(2)(a) (1994)).

**126.** 532 U.S. at 144, 121 S.Ct. at 1326.

**127.** 532 U.S. at 148, 121 S.Ct. at 1328 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)).

**128.** 532 U.S. at 148, 121 S.Ct. at 1328.

**129.** 532 U.S. at 148., 121 S.Ct. at 1328.

**130.** 532 U.S. at 149., 121 S.Ct. at 1329.

tinued, "[r]equiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators—burdens ultimately borne by the beneficiaries." [131] All these conclusions and observations apply with equal if not greater force to community property laws that would require an administrator to pay benefits in a manner different from that prescribed by plan documents.

More pointedly, the Supreme Court said in *Egelhoff*:

1) "[D]iffering state regulations affecting an ERISA plan's 'system for processing claims and paying benefits' impose 'precisely the burden that ERISA pre-emption was intended to avoid.'" [132]

2) "[T]he statute at issue here directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents." [133]

3) "[Plan administrators] also must be attentive to changes in the interpretations of those statutes by state courts. This 'tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction' is exactly the burden ERISA seeks to eliminate." [134]

4) "[U]nder the text of ERISA, the fiduciary 'shall' administer the plan 'in accordance with the documents and instruments governing the plan,' 29 U.S.C. § 1104(a)(1)(D). The Washington statute conflicts with this command because under this statute, the only way the fiduciary can administer the plan according to its terms is to change the very terms he is supposed to follow." [135]

5) "There is indeed a presumption against pre-emption in areas of traditional state regulation such as family law. . . . But that presumption can be overcome where, as here, Congress has made clear its desire for pre-emption. Accordingly, we have not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans." [136]

In the face of this reasoning, we are constrained to conclude that federal common law would not be crafted to permit community property law to provide a means for a spouse to effectively negate the beneficiary designation made under an ERISA plan. It is for the United States Supreme Court, not this Court, to draw a distinction between the statute at issue in *Egelhoff* and state community property laws. Unless and until the Supreme Court does so, we must apply the rationale of *Egelhoff*. Nor should we draw on the rationale of *Yiatchos*[137] to fashion a federal common-law means of recovery. *Egelhoff* speaks directly to ERISA preemption of

**131.** 532 U.S. at 149, 121 S.Ct. at 1328 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

**132.** 532 U.S. at 150, 121 S.Ct. at 1329 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)).

**133.** 532 U.S. at 150, 121 S.Ct. at 1329.

**134.** 532 U.S. at 151, 121 S.Ct. at 1329 (quoting *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. 478).

**135.** 532 U.S. at 151, 121 S.Ct. at 1329 n. 4.

**136.** 532 U.S. at 151, 121 S.Ct. at 1329 (citations omitted).

**137.** 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964).

marital property law. *Yiatchos* dealt with federal savings bonds, not ERISA.

Moreover, federal common law should be uniform in this area.[138] As the Fourth Circuit said in *Singer*, "[i]n fashioning federal common law, courts do not look to the law of a particular state, but rather should apply common-law doctrines best suited to furthering the goals of ERISA. Consequently, federal common law should be consistent across the circuits."[139] The elements of a constructive fraud on the community are derived, of course, from community property law. The majority of the fifty states are not community property states. The concept of constructive fraud on the community is not a uniform one that readily lends itself to the application of uniform federal common law. Constructive fraud on the community is not the equivalent of common-law fraud. In order to establish constructive fraud, it is not necessary to establish fraudulent intent or other elements of common-law fraud. As the court of appeals explained in this case, courts consider a number of factors in deciding if a gift of community property constitutes constructive fraud:

> Courts consider several factors in determining the fairness of a gift, including the size of the gift in relation to the total size of the community estate; the adequacy of the estate remaining to support the wife, the gift notwithstanding; the relationship of the donor to the donee; and whether special circumstances existed to justify the gift.[140]

We conclude that fraud on the community, absent actual common-law fraud, is the type of claim that Congress intended to preempt under ERISA and that fraud on the community has no counterpart in federal common law. Requiring plan administrators to weigh the factors identified above in deciding whether to honor a designated beneficiary is the type of administrative burden that ERISA sought to eliminate. Accordingly, we hold that Marleen Barnett's claim for constructive fraud on the community and her corresponding claim for a constructive trust are preempted by ERISA.

## V

Dora Barnett also challenges the court of appeals' disposition of issues regarding an allowance for a surviving spouse under the Texas Probate Code and the award of attorney's fees. For the reasons set forth by the court of appeals, we conclude that these contentions have no merit.

\* \* \* \* \* \*

For the foregoing reasons, we reverse the judgment of the court of appeals in part and remand this case to the trial court for further proceedings.

Justice ENOCH filed a concurring opinion.

Justice HANKINSON filed a concurring and dissenting opinion, in which Chief Justice PHILIPS, Justice BAKER and Justice O'NEILL joined.

Justice ENOCH filed a concurring opinion.

I do not join the Court's discussion about federal common law in Part IV of its opinion because the parties neither brief

---

138. *See generally United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) ("Undoubtedly, federal programs that 'by their nature are and must be uniform in character throughout the Nation' necessitate formulation of controlling federal rules.... Conversely, when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision.")

139. *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1453 (4th Cir.1992).

140. 985 S.W.2d at 530.

nor argue the point. But I agree with the Court's opinion, as far as it goes, in parts I, II, III, V, and with the Court's judgment. I write separately because while I agree, as the Court holds today, that ERISA preempts Marleen Barnett's claim for constructive fraud on the community and a constructive trust, the Court is less than clear about the underpinnings of its decision. For in truth, what confronts us is that ERISA, as interpreted by the United States Supreme Court in *Egelhoff v. Egelhoff*,[1] deprives Marleen of her community property interest in the life insurance proceeds. It is not the cause of action she has alleged, it is the right she seeks to enforce.

The Court's opinion plays into the strength of the dissent, for on the surface, Marleen's constructive fraud claim has nothing to do with ERISA or with an ERISA-governed employee benefit plan. She attacks neither the plan, the plan's administrator nor the plan's designated beneficiary—Christopher Barnett's estate. Rather, her quarrel is with Christopher designating Dora Barnett as the estate's beneficiary. Marleen sued the estate, the beneficiary of the estate, and third parties to whom Dora conveyed the policy proceeds. As written, the Court's opinion begs one to ask just how far down the line, as the money passes through more and more hands, does ERISA appropriately have an interest.

But all of this is really beside the point. *Egelhoff* is not about causes of action. *Egelhoff* is about property interests. Unfortunately for Marleen, it is the property right she seeks to enforce that matters.

Because Marleen's claim is predicated on an enforceable community property right in the life insurance proceeds, she could have as well made a claim against the plan administrator, who ordinarily could be forced, before the proceeds were distributed, to pay Marleen her share. It would not matter who the designated beneficiary was. And it is this type of interest ERISA won't permit, as the Supreme Court made clear in *Egelhoff*.[2] The Washington State statute at issue in *Egelhoff* was preempted because it "binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrator must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents."[3] To permit Marleen's claim to continue would be to recognize her community property rights, which would have the same effect, and "thus implicates an area of core ERISA concern."[4] It is therefore the community property right that interferes with ERISA and is preempted. Marleen cannot bring any claim, for constructive trust or otherwise, to enforce that right.

Although the Court's reluctance to be so pointed is understandable, it should not cloak in its opinion the unavoidable reach of the Supreme Court's ERISA jurisprudence. I concur in the Court's opinion, parts I, II, III, V, and its judgment in this case; I write separately to expose the startling breadth of ERISA preemption as the Supreme Court interprets the statute, and its effect on community property rights.

Justice HANKINSON filed a concurring and dissenting opinion, in which Chief Justice PHILLIPS, Justice BAKER, and Justice O'NEILL joined.

I concur in part and dissent in part to the Court's judgment. In my view,

---

**1.** 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001).

**2.** *Id.*

**3.** *Id.* at 147, 121 S.Ct. 1322.

**4.** *Id.*

ERISA does not preempt Marleen Barnett's claim for a constructive trust against her husband Christopher's estate, and the Court has no principled basis for treating Marleen's claim differently from that of an ordinary creditor seeking to garnish or impose a constructive trust on estate funds. The Court holds that Texas' community-property law has a "connection with" an ERISA plan, and that therefore ERISA preempts Marleen's claim. 67 S.W.3d at 121. This broad holding ignores not only the lack of clear and manifest proof that Congress intended ERISA to preempt state marital-property law, but also the United States Supreme Court's repeated admonitions that ERISA will not be lightly interpreted to preempt areas of longstanding, traditional state regulation. *See California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.,* 519 U.S. 316, 330–31, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654–55, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Once the insurance proceeds were properly paid to the named beneficiary—in this case, Christopher's estate—ERISA's objectives and concerns were no longer at issue, and anyone, including Marleen, could pursue a claim against the estate. By reading *Egelhoff v. Egelhoff,* 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), to preempt Marleen's remedy, the Court does precisely what Justice Scalia has cautioned against: "decree[ing] a degree of pre-emption that no sensible person could have intended." *Dillingham,* 519 U.S. at 335–36, 117 S.Ct. 832. Therefore, although I concur in the remainder of the Court's judgment, I respectfully dissent to the Court's judgment that ERISA preempts Marleen's claim for a constructive trust.

In part II of its opinion, the Court concludes that under Texas community-property law, Marleen would be entitled to recover from the executor of Christopher's estate, his mother Dora Barnett, for wrongfully distributing one half of the proceeds of the Prudential life-insurance policy. In part III B, the Court closely analyzes *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), and *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), recognizing that those cases do not foreclose the remedy of a constructive trust, at least for ERISA welfare-plan benefits. I agree with the Court's analysis of the relevant United States Supreme Court precedent and with the Court's conclusion up to that point. I do not agree, however, with the Court's conclusion that *Egelhoff v. Egelhoff,* 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), mandates preemption of Marleen's claim against her husband's estate for a constructive trust. No language in *Egelhoff* changes or distinguishes the holdings of *Mackey* and *Guidry.* Moreover, this Court fails to consider the most important distinction between *Egelhoff* and the case before us—*Egelhoff* did not address the issue presented here. In *Egelhoff,* the Supreme Court determined whether ERISA preempted a challenge to a statute that literally changed the terms of a plan document by automatically revoking the designation of a former spouse as a beneficiary. 532 U.S. at 147, 121 S.Ct. 1322. The plan administrator in *Egelhoff* thus had to determine the effect of the state statute before deciding whether to pay the named beneficiary. *Id.* at 147, 121 S.Ct. 1322. We are simply not presented with that situation here. The plan administrator in this case did not have to discern and apply state law before deciding whom to pay. Rather, the administrator only had to pay, and did pay, the insurance proceeds to the

designated beneficiary, Christopher's estate. This was in accord with ERISA's mandate. Marleen's claim against Dora, as executor of the estate, should therefore proceed under state law, as would the claim of any other creditor.

The lesson of *Mackey* and *Guidry* important to this case is that third parties may garnish or impose a constructive trust on welfare-plan benefits under state laws as long as those state laws have general applicability and do not specifically refer to ERISA benefit plans. *See Mackey*, 486 U.S. at 831–32, 108 S.Ct. 2182; *Guidry*, 493 U.S. at 371–72, 110 S.Ct. 680. Accordingly, the issue here is whether state community-property laws that recognize a claim for constructive fraud on the community and provide for a constructive trust as a remedy are distinguishable from the general garnishment and constructive-trust laws that *Mackey* and *Guidry* held ERISA did not preempt.

Life-insurance policies provided pursuant to an employee-benefit plan are welfare-plan benefits, not pension-plan benefits. *See* 29 U.S.C. § 1002(1). Welfare-plan benefits are not subject to ERISA's anti-alienation provision. *See Mackey*, 486 U.S. at 836, 108 S.Ct. 2182. Therefore, the Texas community-property law that permits a spouse to impose a constructive trust on welfare-plan benefits to remedy constructive fraud on the community should not be preempted for the same reasons that ERISA does not preempt state law that allows strangers to an employee-benefit plan to garnish or impose a constructive trust on welfare-plan benefits. *See id.* at 831–32, 108 S.Ct. 2182; *Guidry*, 493 U.S. at 371–72, 110 S.Ct. 680; *see also Manahan v. Meyer*, 862 S.W.2d 130, 135–39 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (holding that ERISA did not preempt a state-law claim against a defendant who unduly influenced the decedent

to name her as the beneficiary of an ERISA plan life-insurance policy).

The Court correctly notes that the Supreme Court granted certiorari in *Egelhoff* to resolve a conflict among the circuit courts "about whether statutes like that of Washington are pre-empted by ERISA." In *Egelhoff*, the Supreme Court cited *Emard v. Hughes Aircraft Co.*, 153 F.3d 949 (9th Cir.1998), *cert. denied sub nom. Stencel v. Emard*, 525 U.S. 1122, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999), as a case finding no preemption. But in *Emard* the Ninth Circuit considered more than one issue. It considered not only whether ERISA preempted application of the California statutes that would require the distribution of proceeds to someone other than the designated beneficiary, 153 F.3d at 956–61, but also whether a constructive trust could be imposed on life-insurance proceeds after the proceeds were distributed to the named beneficiary. 153 F.3d at 954–55. The court concluded that *Mackey* and *Guidry* supported its holding that ERISA did not bar the application of California's law of constructive trusts. *Id.* In *Egelhoff*, the Supreme Court rejected the Ninth Circuit's holding on the first issue, concluding that state statutes that directly conflict with ERISA's mandate to pay proceeds according to plan documents are preempted, but the Supreme Court did not mention the constructive-trust issue or *Mackey* and *Guidry*. Thus I disagree with the Court's broad statement in this case that *Egelhoff* "implicitly rejected the reasoning in *Emard*." 67 S.W.3d 118. The Supreme Court considered and decided only one of several discrete issues presented in that case. And the issue it did decide is not the issue presented here.

Finally, giving effect to Marleen's community-property rights in her husband's life-insurance policy proceeds does not conflict with ERISA's concern for uniform

and efficient administration. Marleen is no different than an ordinary creditor seeking to garnish the life-insurance proceeds or to impose a constructive trust. Because a constructive trust can be imposed only after a judicial determination that there has been a fraud on the community and that Marleen is entitled to a constructive trust on identifiable proceeds, there is no conflict with ERISA's desire for uniformity in plan administration. I see no principled basis for treating Marleen any differently under ERISA than any other judgment creditor of Christopher's estate.

By concluding that we must interpret *Egelhoff* to preempt Marleen's claim, the Court ignores the Supreme Court's recognition that to construe "relate to" too broadly would remove any limitation on preemption from ERISA:

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for "[r]eally, universally, relations stop nowhere" . . . . But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.

*Travelers*, 514 U.S. at 655, 115 S.Ct. 1671. And this is why the Supreme Court mandates that ERISA not be lightly interpreted to preempt well-established state law. *See Dillingham*, 519 U.S. at 330–31, 117 S.Ct. 832; *Travelers*, 514 U.S. at 654–55, 115 S.Ct. 1671. In sum, I agree with the court of appeals that "[t]he administration of Christopher's probate estate does not relate to an employee benefit plan. [Marleen's] suit against [Dora] as executrix of Christopher's estate, imposes no regulation on HL & P's plan or its administrator, and the obligations imposed on an execu-trix of a probate estate do not implicate ERISA's regulatory concerns." 985 S.W.2d 520, 526. The designated beneficiary of the benefit plan, Christopher's estate, was properly paid. At that point, ERISA no longer applied. Marleen claims only that the executor of the estate must distribute the estate's proceeds in accord with state law, and that claim should not be preempted. Accordingly, although I concur in the remainder of the Court's judgment, I dissent from its judgment that ERISA preempts Marleen's claim for a constructive trust.