**Affirmed and Memorandum Opinion filed July 3, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00343-CV

## IN THE ESTATE OF FLOYD E. DIXON, DECEASED

**On Appeal from Probate Court No. 4**
**Harris County, Texas**
**Trial Court Cause No. 377211-401**

# M E M O R A N D U M    O P I N I O N

This is an appeal from the judgment rendered in a probate dispute between the decedent Floyd E. Dixon's eldest daughter Roslyne M. Dixon Kennedy Taylor and Roslyne's stepmother Addie Mae Dixon.[1] Roslyne sought a judgment that all of the real and personal property owned by Floyd or Addie on the date of Floyd's death was community property, and she asked the probate court to identify and distribute all of it. After a non-jury trial at which no witness testified, the trial court rendered

---

[1] Because some of the people we must discuss share the same last name, we will use each person's first name.

judgment that all of the personal property owned by Floyd or Addie on the date of Floyd's death was community property and all of the real property that either of them acquired before marriage remained that person's separate property. The trial court did not identify or distribute any of the property and instead found that the evidence was insufficient to do so.

On appeal, Roslyne argues that the evidence admitted at trial was sufficient for the trial court to identify all of the community personal property, and asks that we render judgment ordering Addie or Addie's estate to pay to each of Floyd's other heirs an amount equal to that heir's proportionate share of the personal property's value as of the date of Floyd's death. In her second issue, Roslyne asserts that Addie has died and she asks that we award to Floyd's other heirs their respective proportionate shares of Floyd's separate real property. We affirm.

## I. BACKGROUND

Floyd E. Dixon had eight children from prior marriages before he married Addie Mae Dixon in 1974. Two of Floyd's children predeceased him. Of those two children, one had no living children and the other was survived by two sons.

Floyd's death in July 2007 was followed by long-running litigation between certain of his children and his widow. Because this case relies on evidence and judgments from some of the earlier actions, we recount the relevant parts of earlier litigation, so far as we can discern it.

### A. *Dixon I*

A suit filed in the 55th District Court of Harris County concerned the characterization of certain accounts, annuities, and certificates of deposit that Floyd owned jointly with one or both of his daughters Roslyne and Cathy Gilmore, or that he had established for the benefit of one or both of these two daughters. We will

refer to that suit as "*Dixon I*."[2]  Of that case, we know only the contents of the district court's combined Findings of Fact and Conclusions of Law and Final Judgment and a few stipulations by Roslyne, Cathy, and Addie regarding two annuities at issue in that case.

Addie contended in *Dixon I* that financial accounts and instruments held by her or Floyd on the date of his death were community property.  According to the findings and the judgment in that case, Roslyne and Cathy spent some of the money held in these accounts and instruments after their father's death and paid the remainder into the registry of the court "along with other accounts held by various stake holders."[3]  The district court held that half of the funds held in the registry of the court were community property to be disbursed to Addie, and the other half was Roslyne and Cathy's property, to be disbursed jointly to them.  The trial court did not state the amounts involved or identify the any of the accounts, annuities, or certificates of deposit at issue.[4]

## B.    *Dixon II*

At some point, Roslyne attempted to probate a copy of Floyd's will in Probate Court No. 4 in Harris County.  *See In re Estate of Dixon*, No. 14-12-01052-CV, 2014 WL 261020, at *1 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014, pet. denied) (mem. op.) ("*Dixon II*").[5]  The probate court failed to find that Roslyne had overcome the presumption that Floyd had revoked the original will, and we affirmed

---

[2] *Allstate Life Ins. Co. v. Dixon*, Cause No. 2008-36412 (55th Dist. Ct., Harris Cty., Tex.).

[3] *Dixon I*, Findings of Fact & Conclusions of Law & Final J. para. 3 (May 12, 2011).

[4] *See id.*

[5] Roslyne's name was given as "Rosalyne" in *Dixon II*, but the judgment in *Dixon I* and the records of this proceeding identify her as "Roslyne."

the trial court's judgment. *See id.* Floyd therefore is considered to have died intestate.

Two-and-a-half years after we ruled in *Dixon II*, the probate court signed a judgment declaring heirship. Addie retained her half-interest in community property and was awarded a 1/3 life estate in Floyd's separate real property. Floyd's six surviving children—Roslyne, Cathy, Bernadette E. Dixon, Floyd E. Dixon Jr., Sammie Charles Dixon, and Judy Carol Dixon Neal—each were awarded a 1/7th share of Floyd's half-interest in community property and a 1/7th interest in Floyd's separate real property. Floyd's grandsons Michael and Donald Flake each were awarded a 1/14th share in Floyd's half-interest in community property and a 1/14th interest in Floyd's separate real property. The interests of Floyd's descendants in his separate real property was subject to Addie's life estate in the property.

## C. *Dixon III*

After the probate court rendered judgment declaring heirship, Roslyne brought the current proceeding in the probate court. In her petition, Roslyne asked the probate court to characterize as community or separate property (1) certain personal property consisting of specified funds held on the date of Floyd's death among six bank accounts, three certificates of deposit, two annuity contracts, and two life insurance policies; and (2) the four lots of real property that Addie acquired before the marriage and the single lot of real property that Floyd acquired before the marriage. Roslyne maintained that all of the personal and real property was community property, and she asked that the probate court identify and distribute the property among Floyd's heirs in the proportions stated in the judgment declaring heirship.[6]

---

[6] Addie filed a counterclaim against seeking reimbursements and offsets for the funds from these sources that allegedly were withdrawn by Roslyne, Cathy, or Floyd Jr., but those claims were

At trial, Addie agreed that the personal property was community property, excepting only the proceeds from the sale of stock she had received by devise from her sister. She maintained, however, that the real property she and Floyd each acquired prior to marriage remained that spouse's respective separate property.

The case was tried without a jury, and no witnesses testified.[7] The evidence consisted solely of four sets of Addie's discovery responses, the deeds to the real properties Addie acquired before her marriage to Floyd, a certified copy of the Findings of Fact and Conclusions of Law and Final Judgment in *Dixon I*, and a transcript of the trial in *Dixon II*.

The probate court rendered judgment that all of the personal property held by Floyd or Addie on the date of Floyd's death was community property; however, the probate court stated in the judgment and in its findings of fact and conclusions of law that there was insufficient evidence to allow the trial court to determine whether the personal property alleged (1) did in fact exist on the date of Floyd's death; (2) had been transferred pursuant to a pay-on-death provision, a beneficiary designation, or joint tenancy with rights of survivorship; and (3) was subject to or used to satisfy creditor claims. The probate court further held that that all real property purchased by either spouse before the marriage remained that spouse's separate property under the inception-of-title rule.[8] As with the personal property, the real property was not identified in the judgment or distributed.

---

not tried. The trial court instead stated that Addie's claims had to be asserted against Floyd's estate, and that no estate had ever been opened.

[7] After calling Addie as a witness, Roslyne's counsel reconsidered and asked no questions of her. No other witness was called.

[8] Under this rule, whether property is community or separate generally is determined by its character at inception. *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). A spouse's separate property includes property owned or claimed by the spouse before the marriage. TEX. FAM. CODE ANN. § 3.001(1) (West 2006).

Roslyne presents two issue on appeal. In her first issue, she argues that the evidence admitted at trial was "sufficient to establish the identification, location and in whom the title to certain personal financial accounts was vested" on the date of Floyd's death. In her second issue she asserts that Addie has died, and she asks this court to award Floyd's separate real property to his descendants in the proportions stated in the judgment of heirship.

## II. IDENTIFICATION OF, AND TITLE TO, PERSONAL PROPERTY

Roslyne argues in her first issue that the trial court erred in failing to render judgment against Addie for the amounts identified in certain of Addie's amended answers to interrogatories as being held on the date of Floyd's death in or through twenty identified bank accounts, checks, certificates of deposit, and annuity contracts. She contends that these discovery responses constituted sufficient evidence for the trial court to identify the amount and location of these funds. Roslyne further asserts that Addie's attorney admitted that Addie spent all of the funds. From this, she reasons that she and Floyd's other heirs are entitled to judgment against Addie in the amount of each such heir's proportionate share of the value of the accounts and instruments on the date of Floyd's death. For several reasons, we conclude that the record does not support these arguments.

### A. Absence of a Pleading for the Requested Relief

First, Roslyne did not plead for judgment against Addie; she prayed that the trial court (1) declare that, with the exception of property divided by the 55th District Court, all property held by Addie or Floyd is community property; (2) identify all of Addie's and Floyd's personal and real property "by legal description, account number or other identifying label," and (c) "distribute [the described property] among the parties who have been found to be Mr. Floyd Dixon's heirs as listed in and in the proportions stated in the Judgment Declaring [H]eirship." Roslyne did

6

not plead that Addie be required to make up any difference between the current value of any account, annuity, or certificate of deposit and its value on the date of Floyd's death.

**B.      No Admission That Addie Spent All the Money**

Second, Addie's counsel J.C. Loftis did not "admit[] that Addie spent all the funds" as Roslyne represents. Loftis said to the trial court, "Most of the bank accounts are no more. Banks don't even have records of them. There's nothing. There's no money in, there's no money in these accounts." That is not an admission that Addie spent all of the funds in all of the bank accounts, much less that she received and spent all of the funds held in the annuities and certificates of deposit.

In making this representation, Roslyne may instead have had in mind statements Loftis made when speaking specifically about Plus4 Credit Union. In that context, Loftis said, "as it stands now, again, there's no account. I don't know — well, [Addie] might have an account at Wells Fargo but, Judge, she's had to spend this money." But that is not the only evidence regarding the account at Plus4 Credit Union. Addie stated in one of her amended interrogatory answers that an account at Plus4 Credit Union contained $4,133.65 on the date of Floyd's death; however, the evidence also contains ten checks totaling $4,277 that were written by Cathy after Floyd's death from a Plus4 Credit Union account in Floyd's name. Because the account numbers on the checks have been redacted, we cannot definitely ascertain that the checks were written from the same account that Addie referred to in this particular interrogatory answer; on the other hand, there is no evidence that there was ever more than one account at Plus4 Credit Union.

## C. Conflicting Evidence

Third, Addie gave conflicting answers to nearly identical interrogatories asking her to identify the amount and location of funds that she or Floyd possessed on the date of his death. Although Roslyne refers only to Addie's "amended responses to interrogatories," the evidence admitted at trial also includes Addie's responses to Roslyne's "second set of interrogatories," and Addie's answers to substantially the same questions differ.

In Addie's amended answers to interrogatories, Interrogatory No. 3 states,

> Please list all cash, bank account numbers, stock certificate numbers, bonds, annuity account numbers, the legal description and address of any real property, and funds which you and the Decedent, Floyd E. Dixon, held either jointly or severally on July 31, 2007, the date of the death of Decedent, Floyd E. Dixon. Do not list any asserts that were divided by the Order signed on May 12, 2011, by the 55th District Court of Harris County, Texas under cause number 200836412.

Interrogatory No. 13 of the second set of interrogatories differs from this only in that it (a) asks for the legal description of any real property but not its address; (b) asks that Addie also identify any funds held for non-profit corporations, and (c) adds the style of the case in the 55th District Court.

In her amended answer to Interrogatory No. 3, Addie listed three certificates of deposit, twelve checks written on an unidentified account at Plus4 Credit Union, two annuity contracts with Chase Life and Annuity Co., one account at Chase Bank, and two accounts at Wells Fargo Bank. In her answer to Interrogatory No. 13 of the second set of interrogatories, Addie identified only two certificates of deposit, unspecified checks written from a specific account at Plus4 Credit Union, no annuity contracts with Chase Life and Annuity Co., two annuity contracts with Protective Life Insurance Company having the same contract numbers as the Chase annuities, two accounts at Chase Bank, and no accounts at Wells Fargo. The only accounts or

8

instruments that Addie identified in both sets of interrogatories are (a) a Plus4 Credit Union certificate of deposit ending in 0207, (b) a Plus4 Credit Union certificate of deposit ending in 0208, (c) a Chase bank account ending in 7601, and (d) the two annuities identified as having been issued by Chase Life and Annuity Co. or by Protective Life Insurance Co.

### 1.    *The Certificates of Deposit*

Regarding the certificates of deposit, counsel for both parties represented at trial that the certificates of deposit already had been divided by the 55th District Court. Loftis stated that all of the certificates of deposit were interpleaded into the 55th District Court "except for the ones that were paid directly to Roslyne and her sister." Roslyne's attorney Isaac Henderson added, "As it should have been because they were the beneficiaries . . . ." The probate court asked if there were any interpleaded funds left, and Loftis answered, "No. All that's been divided. That was divided back in the 55th district court."

### 2.    *The Chase Bank Account*

As for the Chase bank account, there is evidence that this also was divided by the 55th District Court. During the trial in which Roslyne attempted to probate a copy of Floyd's will, Roslyne testified that she and Cathy were the beneficiaries of the Chase accounts and "that was done through the courts." A transcript of that trial testimony was admitted into evidence in this case. Roslyne's testimony is some evidence that the Chase accounts were among the assets divided by the 55th District Court.

### 3.    *The Annuities*

Regarding the annuities, the material that the trial court judicially noticed included a stipulation by Addie, Roslyne, and Cathy to the facts stated in Protective

Life Insurance Company's responses to Addie's interrogatories in the 55th District Court. In those responses, Protective Life explained that it purchased Chase Life and Annuity Company, which merged into Protective Life; thus, the Protective Life annuities are the former Chase annuities. Protective Life also explained that Roslyne and Cathy were the beneficiaries of one annuity, and that Cathy was the sole beneficiary of the other annuity. Finally, Protective Life stated that the annuities already had been paid to the beneficiaries.

### 4. *Conclusion*

Given the absence of a pleading for a money judgment against Addie, the conflict between Addie's amended responses to one set of interrogatories and her responses to the second set of interrogatories, the representations that most of the accounts no longer exist, and the uncertainty as to which assets were divided in the 55th District Court, the trial court did not reversibly err in failing to (a) render judgment against Addie and in favor of Floyd's descendants in an amount equal to each descendant's proportionate share of the value of the personal community property at issue as of the date of Floyd's death, or (b) identify and order distribution of community personal property as it existed at the time of trial. We overrule Roslyne's first issue.

### III. CHARACTERIZATION OF REAL PROPERTY

In her second issue, Roslyne states that Addie has died and asks us to award to Floyd's remaining heirs their respective proportional shares of his separate real property. The record does not support this request for relief.

There is no evidence before us that Addie has died. Addie was living at the time of trial, and had a vested life estate in one-third of Floyd's separate real property. *See* TEX. EST. CODE ANN. § 101.001(c) (West 2014) (with exceptions

inapplicable here, an intestate decedent's estate "vests immediately in the person's heirs at law"); *id.* § 201.002(b) (where intestate decedent has descendants who are not surviving spouse's descendants, surviving spouse has a life estate in one-third of decedent's separate real property, with remainder descending to decedent's descendants).  The trial court was never asked to award all of the interests in Floyd's separate real property to fewer than all of Floyd's heirs, and given the state of the record, we decline to do so in the first instance.

Roslyne's request on appeal also arguably requires us to decide questions of credibility differently than the trial court has decided them.  On this record, all we know of Floyd's ownership of real property are the representations of interested parties and their counsel, but the trial court was unwilling to rule on that basis and instead insisted that Floyd's deed to any real property be produced.  We cannot fault this approach.  We already have seen that Addie's answers to interrogatories conflicted with each other and with the representations of counsel.  But the representations of counsel about producing Floyd's deed also were not borne out.  In particular, the trial court asked Addie's counsel if he had the deed to Floyd's property, and Loftis answered, "I can get it, it's just a matter of going downstairs."  The probate court later stated again, "We need to get that deed," and this time, Roslyne's counsel responded, "Okay.  We'll get that deed."  Although each side's counsel represented that it would obtain Floyd's deed for the record, neither one did so.  On this record, we cannot say that the trial court reversibly erred in failing to identify and award a specific tract of land to the litigants without ever having seen documentation to support their representations that Floyd acquired that particular real property before his marriage to Addie.

We overrule Roslyne's second issue.

## IV. CONCLUSION

Having overruled each of Roslyne's issues, we affirm the trial court's judgment.

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Donovan, and Brown.